640 So.2d 417 (1994)
W. Glenn SOILEAU, Plaintiff-Appellant,
v.
SOUTHERN PACIFIC RAILROAD, et al., Defendants-Appellees.
No. 93-1064.
Court of Appeal of Louisiana, Third Circuit.
April 20, 1994.
*419 Donald Soileau, Mamou, for W. Glenn Soileau.
John Edmund McElligott Jr. and Kyle Liney Mark Gideon, Lafayette, for Southern Pacific R.R., et al.
Patrick J. Briney, Lafayette, for St. Martin Parish Police Jury.
Virginia Denise Banks Listach, Baton Rouge, for State, DOTD.
Gregory Kent Moroux, Lafayette, for Scottsdale Ins.
Michael A. Harris, Baton Rouge, for City of Breaux Bridge.
Before KNOLL, COOKS and WOODARD, JJ.
KNOLL, Judge.
This personal injury case involves a moped motorized bike accident on the Refinery Bridge in Breaux Bridge during the 1991 Crawfish Festival. The Refinery Bridge has a set of railroad tracks through the center of the bridge surface which used to accommodate trains; now trains no longer use the bridge and the bridge use is limited to two-way vehicular traffic and pedestrians. W. Glenn Soileau brought suit against the Southern Pacific Transportation Company (Southern Pacific), the St. Martin Parish Police Jury and its insurer, International Special Risk Services (International), the City of Breaux Bridge and its insurer, Scottsdale Insurance Company (Scottsdale), and the State of Louisiana Department of Transportation and Development (DOTD). Soileau contended that his accident was caused by a severe pot hole on the Refinery Bridge and that the defendants were negligent and strictly liable for the defective condition which caused his damages. The suit against Southern Pacific, International and Scottsdale was tried by a jury and the remaining defendants, all political subdivisions of the state, were tried by the trial judge. The jury and the trial judge rendered verdict against Soileau and his claims were ordered dismissed with prejudice.
Soileau appeals, contending that the trial court erred: (1) by failing to allow the bridge inspection report of the State of Louisiana to be introduced into evidence; (2) by failing to allow the bridge inspection report of Southern Pacific to be introduced into evidence; (3) by failing to allow the bridge inspection report of St. Martin Parish to be introduced into evidence; (4) by failing to allow the Breaux Bridge city engineer to testify about his inspection of the bridge three weeks prior to the accident; (5) by failing to allow testimony into evidence of the city council's meeting with the city engineer three weeks before the accident; (6) by failing to allow the expert testimony of Gene Moody about the condition of the surface and subsurface of the bridge; (7) by failing to allow the expert from Louisiana Paving to testify about the improper repair of the bridge surface three days before the accident; (8) by prohibiting Soileau to enter into evidence correspondence from the city engineer advising that the bridge be closed to public use; (9) in failing to find that the accident occurred on the bridge and then dismissing the case against Breaux Bridge, St. Martin Parish, Southern Pacific and the state; (10) in assessing 100% of the fault to Soileau; (11) in allowing testimony of Soileau's disciplinary hearing before the Louisiana Supreme Court seven years earlier as evidence of his problem with alcoholic beverages; (12) in finding *420 that none of the defendants had custody of the bridge; (13) in failing to allow the jury to hear Breaux Bridge's responses to Soileau's requests for admission of fact; and, (14) in failing to award damages. We affirm.

FACTS
The learned trial judge detailed the facts of this accident in her written reasons for judgment which we adopt as our own:
"The uncontested facts are as follows. Around midnight of May 4/May 5, 1991 a paramedic with Acadian Ambulance received a call to respond to an accident on the Refinery Bridge. When he arrived at the western end of the bridge, he found the plaintiff [Soileau] on the ground with an obvious leg injury. The plaintiff refused the services of Acadian Ambulance. With the assistance of sheriff's deputies who had come to the scene, he remounted his moped and drove back across the bridge to the eastern end, down the approach road, and the several additional blocks to his home. From there he went to a hospital in Lafayette in a private car. The injury proved severeal, eventually requiring knee replacement. The plaintiff did not report the accident. There was no investigation or police report.
* * * * * *
The plaintiff gave the following account of his accident. Sometime after midnight on the Saturday/Sunday of the Crawfish Festival [of 1991], he and his business partner left their downtown bar, the Crawfish Swamp, to visit the partners' daiquiri stand in Parc Hardy, which was the other site for the Festival. As was their custom, they each rode a moped. This mode of transportation facilitated traveling in the city which was jammed with cars and pedestrians visiting the City for the Festival. They stopped at his partner's house, crossed the northernmost of the three bridges which span the Bayou Teche in Breaux Bridge, visited Parc Hardy, and then made a stop at the plaintiff's house.
The plaintiff decided that they should return to downtown by way of a shortcut, the Refinery Street Bridge, the middle of the three bridges. With the plaintiff in the lead, the two mopeds cut through a path in an open lot, approaching the bridge from the north, at a right angle to the approach road. They mounted the bank, turned to the right approximately 20 yards to the east of the bridge, and proceeded onto it. They were traveling in the center of the westbound lane, between the railroad rails which run the length of the bridge on the left and the railing on the right. Their speed was approximately 10 to 12 miles per hour.
About three-quarters across the bridge, which is apparently 240 feet in total length, the plaintiff testified that he saw a pot-hole 4 to 5 inches wide. He released the throttle and applied the brakes but was unable to steer around the hole. The hole caused him to lose control of the moped; he swerved to the left and into the rut or open strip which runs next to the rail of the railroad track. Unable to steer, he continued in that rut for approximately 30 to 40 feet, applying his brakes for the entire distance. He then lost his balance, fell from the moped, and struck his knee upon the bridge surface. He skidded about 15 feet and came to rest just beyond the end of the bridge. His partner, claiming to be an eyewitness to the accident, was traveling about 15 feet to the rear. He saw the rear light go up and down and then saw sparks.
The defendants contend that the accident did not occur on the bridge but somewhere off the western end, probably in the area where the railroad tracks curve off the road, creating particularly rough conditions on the surface. The basis for this conclusion is that all of those persons who testified about the scenethe plaintiff, the business partner, the Acadian Ambulance paramedic, the three sheriff's deputies placed the plaintiff at rest off the bridge. The paramedic testified that he was as much as 40 to 60 feet away."
At the conclusion of Soileau's case, the trial court granted a directed verdict on the negligence claims against Southern Pacific, but allowed the jury to decide the strict liability claim against Southern Pacific. The trial court also granted DOTD's motion for directed *421 verdict and dismissed Soileau's claims against it, finding that Soileau presented no evidence that the State owns or maintains the Refinery Bridge.
After the jury deliberated the liability of Southern Pacific, International and Scottsdale, the respective insurers of St. Martin Parish and the City of Breaux Bridge, the jury answered the following interrogatories:
"1. Do you find, by a preponderance of the evidence, that the surface of the Refinery Bridge was defective because it had a condition which created an unreasonable risk of harm to persons using the bridge?
 Yes _ No x
2. Do you find, by a preponderance of the evidence, that the defect in the property was a cause in fact of injury to W. Glenn Soileau?
 Yes _ No x
3. Do you find, by a preponderance of the evidence, that the surface of the Refinery Bridge was in the custody of the Southern Pacific Transportation Company?
 Yes _ No x
4. Do you find, by a preponderance of the evidence, that the surface of the Refinery Bridge was in the custody of the St. Martin Parish Police Jury and that the St. Martin Parish Police Jury had actual or constructive knowledge of an unreasonable risk of harm?
 Yes _ No x
5. Do you find, by a preponderance of the evidence, that the surface of the Refinery Bridge was in the custody of the City of Breaux Bridge and that the City of Breaux Bridge had actual or constructive knowledge of an unreasonable risk of harm?
 Yes _ No x
6. Do you find, by a preponderance of the evidence, that W. Glenn Soileau was negligent and that such negligence was cause-in-fact of damage to himself?
 Yes x No _
Apportionment.
7. What amount of legal fault (negligence and/or strict liability) expressed as a percentage, do you attribute to each party?
NOTE: If you have found any party not legally at fault, for the party enter 0.

 a. Southern Pacific Transportation Company 0
 _____
 b. St. Martin Parish Police Jury 0
 _____
 c. City of Breaux Bridge 0
 _____
 d. W. Glenn Soileau 100%
 _____
 TOTAL: 100%"

The trial judge then considered the liability of the public entities, St. Martin Parish and the City of Breaux Bridge, and rendered written reasons for her determination. The trial judge concluded that: (1) Southern Pacific, the City of Breaux Bridge, and St. Martin Parish had custody of the surface of the bridge in the general area of the accident; (2) the condition of the surface did not create an unreasonable risk of harm; (3) Soileau failed to prove by a preponderance of the evidence that a defect on the surface caused his injury; and, (4) even if there was a defect, neither public body had actual or constructive notice of the surface condition, i.e., a severe pot hole, which Soileau contends was the cause of his accident.

ASSIGNMENTS OF ERROR
The defendants contend that we should not consider assignments of error 2, 7, 11, 13 and 14. They argue that these assignments of error are either not briefed or they are presented in a conclusionary fashion without reference to the record and supporting jurisprudence.
After reviewing Soileau's brief, we find that assignments of error 2, 7, 13 and 14 are not mentioned in brief and are considered abandoned. Assignment of error 11 is only obliquely mentioned in one sentence in the brief without specific reference to the disciplinary proceedings before the supreme court. Accordingly, we do not find that this assignment of error is properly before us.
We likewise note that Soileau has not specified in any assignment of error that the trial judge erred in granting DOTD's motion for directed verdict. Although Soileau occasionally refers to DOTD at various times in brief, at no time does he refer to the standards *422 for granting a directed verdict, nor does he designate any specific evidence which would have prohibited the trial judge's grant of a directed verdict. He also does not present specific argument regarding how the trial judge erred in granting DOTD's motion for directed verdict. We do not find that Soileau has preserved any issues related to DOTD which we can consider on appellate review. Accordingly, the judgment is final as to DOTD.
Thus, in summation, we find that the only assignments of error properly before us are 1, 3, 4, 5, 6, 8, 9, 10, and 12 as they relate to Southern Pacific, Breaux Bridge, and St. Martin Parish, and their respective insurers. However, for reasons specified hereafter, we pretermit discussion of assignments of error except for Soileau's contention that the jury and trial judge erred in finding that Soileau failed to prove that the bridge surface was defective.

PROOF OF DEFECT
Soileau contends that the trial judge and jury erred in finding that he failed to prove that the condition of the bridge surface created an unreasonable risk of harm to persons on the premises.
From the outset, we note that the only claim which the trial court allowed the jury to consider with regard to Southern Pacific was Soileau's strict liability claim. We are also mindful that the claims against the public entities, though styled in negligence and in strict liability, were presented to the trial judge, as elaborated hereafter, premised on Soileau's proof that the public entities had actual or constructive notice of the defect.
An appellate court cannot set aside a trial court's finding of fact unless it is manifestly erroneous. Rosell v. ESCO, 549 So.2d 840 (La.1989).
The owner, or person having custody, of immovable property has a duty to keep such property in a reasonably safe condition. He must discover any unreasonably dangerous condition on his premises and either correct the condition or warn potential victims of its existence. This duty is the same under strict liability as defined in LSA-C.C. Art. 2317 as well as under the law of negligence rooted in LSA-C.C. Art. 2315. Usually to recover in negligence the plaintiff must show that the owner, or custodian, either knew or should have known of the risk. Farr v. Montgomery Ward and Company, Inc., 430 So.2d 1141 (La.App. 1 Cir.1983), writ denied, 435 So.2d 429 (La.1983). On the other hand, under LSA-C.C. Art. 2317, the plaintiff does not have to prove the defendant's knowledge of the risk. Thus, in order for Soileau to recover from Southern Pacific, it was incumbent upon him to prove three elements: (1) that the road surface of the bridge was defective; (2) that his damages were caused by the defect in the road surface on the bridge; and, (3) that Southern Pacific had custody of the road surface of the bridge. Doughty v. Insured Lloyds Ins. Co., 576 So.2d 461 (La.1991).
However, LSA-R.S. 9:2800(B) provides that even under a strict liability theory, when the defendant is a public entity, such as the City of Breaux Bridge and St. Martin Parish, the plaintiff must prove that the defendant had actual or constructive knowledge of the vice or defect and failed to remedy it within a reasonable time. Glankler v. Rapides Parish School Bd., 610 So.2d 1020 (La.App. 3 Cir.1992), writ denied, 614 So.2d 78 (La.1993). Under either theory of liability, when the defendant is a public entity, the plaintiff has the burden of proving that: (1) the property was defective because it had a condition that created an unreasonable risk of harm to persons on the premises; (2) the property which caused the damage was in the custody of the defendant; (3) the defendant had actual or constructive notice of the risk; and, (4) the defect in the property was a cause in fact of the injury. Nicholes v. St. Helena Parish Police Jury, 604 So.2d 1023 (La.App. 1 Cir.1992), writ denied, 605 So.2d 1378 (La.1992).
Moreover, whether we consider the liability of Southern Pacific, the City of Breaux Bridge or St. Martin Parish under negligence or strict liability, it was incumbent upon Soileau to first prove by a preponderance of the evidence that there was a defect in the surface of the bridge. Shook v. Cambridge *423 Mut. Fire Ins. Co., 451 So.2d 1298 (La.App. 1 Cir.), writ denied, 458 So.2d 122 (La.1984).
In her well written reasons for judgment, the trial judge succinctly summarized the evidence which she and the jury heard about the defect in the surface of the bridge. She stated:
"Plaintiff alleges in his petition that the accident was caused by a `severe pot hole' on the Refinery Bridge. Defendants contend, therefore, that the plaintiff must identify the specific pot hole which caused the accident, ... The plaintiff contends that it is not necessary for him to prove the existence of a specific pot hole; the `property' in question is the bridge itself. He need only prove that the bridge is defective. He contends that the age and general condition of the bridge, coupled with the history of the need for periodic asphalt recovering of pot holes on the bridge, the crude method by which that was done, and testimony that the surface of the bridge was rough and uneven both before and after the accident, satisfy his burden of proof. This difference of opinion required the court, at the jury trial, to determine the `property' at issue.
It is the opinion of the court that, under the particular facts of this case, it is too great a burden to require the plaintiff to identify the particular pot hole and prove that the defendants knew of it in time for repair. The plaintiff was travelling at night. Although it was his responsibility to report the accident, it is a fact that there was no investigation. But neither does the plaintiff satisfy his burden by proving the general condition of the bridge. The court believes that the property in question is the surface of the bridge in the general area of the accident: the western one fourth of the westbound lane.
* * * * * *
The next requirement is that plaintiff prove that the property was defective, that is, that it created an unreasonable risk of harm to persons on the premises. It is here that the court believes the plaintiff has failed to carry his burden. Balancing the probability and magnitude of the possible risks against the utility of maintaining the bridge in the fashion in which the public bodies chose to do it, the court does not believe that the risk of this injury was within the ambit of protection of the duty....
Use of the Refinery Street Bridge resulted in an ongoing need to patch the surface. The pattern of maintenance conducted by the public bodies was as follows: a major repair in January or February, following use by the heavy sugar cane trucks during grinding, and an additional repair in anticipation of increased traffic for the Crawfish Festival. The latter repair was actually made three days prior to the accident at issue. There was testimony that City officials checked the surface periodically and that additional repairs were made from time to time.
In spite of these repairs, there is no doubt that at this time the surface of the Refinery Street Bridge was rough and uneven. In the center of the bridge, the asphalt did not meet the rails but left a space for passage of the wheels of the railroad cars. Asphalt was laid over timbers, rather than a concrete base; as a result the surface was bumpy. The issue is whether the maintenance by the public bodies resulted in a surface which was, on the date of this accident, unsafe for reasonable use.
Plaintiff testified that he saw pot holes, indeed the offending pot hole, immediately before the accident. He caused photographs to be taken of the entire bridge and the approaches but in very few can one identify the surface of the western end. The first photographer, Steve Comeaux, was commissioned by an agent of the plaintiff; he took photographs three days after the accident. He was not directed to concentrate on any particular area. The second photographer, Dan Roth, took photos on May 7, May 10 or 11, and sometime in June. All of his notes, which contained measurements and identifying data, were turned over to the plaintiff's office; they are now missing. Without the notes, it is impossible to identify the location of most of the photographs. Additionally, some of *424 the photographs are missing. As a whole, the photographs show the ruts or spaces next to the rails and rough conditions in many places, but fail to prove pot holes in this specific location.
Plaintiff's witnesses corroborate the general condition of the bridge but also do not testify about the surface in the area where the accident began. Plaintiff's partner testified that he saw pot holes when he searched for plaintiff's watch; that search was conducted where plaintiff fell, by all accounts on the rail and far from the location of the offending pot hole. Similarly, the deputies at the scene were not in the critical area but some 30 to 40 feet west of the site of the initial cause.
Although there was general testimony by the repairmen that there were `holes' in the bridge, the most credible witnesses testified that these `holes' were next to the rails; no one could place these holes where the plaintiff allegedly struck the severe pot hole. The court was particularly impressed with the testimony of Willie Bertrand, one of the Breaux Bridge repair crew. He testified that even after the repair the surface was uneven, but there were no holes. He inspected the surface on the Monday after the Festival; he said that the surface had held up well.
Plaintiff's responsibility for his own accident is most properly considered under comparative negligence. However, the plaintiff's conduct does have pertinence when considering whether the defendants should be responsible for this use of the bridge. The condition of the surface is defective only if it poses an `unreasonable risk of harm.' The plaintiff lived in the area and was familiar with the condition of the bridge. He knew it was recently resurfaced but must also have known that the type of repairs conducted on this bridge did not produce smooth pavement. When he first turned onto the approach road, he felt that uneven surface. He must have been aware that the lighting was poor. Yet he chose to traverse the bridge in the middle of the night on a moped.
The court concludes that the risk which occurred was not within the ambit of the defendants' duty; the condition of the surface did not create an unreasonable risk of harm. Additionally, the plaintiff did not prove, by a preponderance of the evidence, that it was a defect on the surface which caused his injury."
Since it was Soileau who asserted that a severe pot hole was the cause of his fall, we also find it important to note that the trial judge concluded that plaintiff's story "cannot be accurate." Commenting on Soileau's credibility, the trial judge noted:
"Even if the incident began on the bridge, the defendants contend that this chain of events described by the plaintiff is incredible. Indeed it does not seem possible that the ... [plaintiff's] moped could traverse 30 to 40 feet, brakes applied for the entire distance, if it began at the speed of 10 miles per hour. Nor does it seem possible for a fall at the conclusion of the path to cause the injury which occurred. The knee was described by Dr. Louis Blanda as `pulverized bones' and by Dr. James McDaniel as the result of a bi-polar explosion injury."
This case presents the classic set of facts for which the Rosell court insisted that an appellate court not disturb the conclusions of the triers of fact unless their determination was manifestly erroneous. The case sub judice presents us with credibility determinations which led the trial judge to conclude that Soileau's assertion of facts did not conform with the severe injuries encountered. In light of the fact that no investigation of the accident occurred even though appropriate police personnel were on hand, we cannot say that the triers of fact were in error if they determined that Soileau's assertions were not credible. Moreover, the evidence of the repairs made by the City of Breaux Bridge and St. Martin Parish just three days before the accident, together with the testimony that immediately following the accident no "severe pot hole" existed in the area where the accident began, conforms with the photographic evidence that the bridge surface was not defective as asserted by Soileau. Therefore we conclude that the *425 jury and the trial judge were not manifestly erroneous in their conclusions that Soileau failed to prove that there was a defect in the surface of the bridge which could have caused his accident.
As pointed out earlier in this opinion, having reached this threshold determination adverse to Soileau, we pretermit detailed discussion of the other assignments of error. Even if we were to conclude that the various bridge inspection reports and expert testimony derived from them were erroneously excluded from evidence, a determination we do not reach, this testimony of the public entities' notice of the generally poor condition of the bridge does not affect the trier of facts' conclusion that Soileau failed to prove a surface defect he described as the cause of his accident. We further note that contrary to Soileau's contention, neither the trial judge nor the jury, as reflected in its verdict interrogatories, concluded that the public entities did not have custody of the bridge. To the contrary, the trial judge specifically found that Breaux Bridge and St. Martin Parish had custody of the bridge; the jury's answers to the verdict interrogatories as related to the public entities do not conflict with this determination since its negative response was to a three part, compound interrogatory, only one part of which involved custody. Similarly, we find that the jury's specific rejection of Southern Pacific's custody of the bridge was based on the evidence that the railroad did not maintain the bridge and had no control over the public entities' bridge repairs. Accordingly, we do not find that our assessment of the trier of facts' determination adverse to Soileau would have been affected had we treated all of the assignments of error.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Soileau.
AFFIRMED.
COOKS, J., dissents with reasons.
COOKS, Judge, dissenting.
As the majority notes, Soileau first was required to prove the bridge was defective. The majority, like the trial court, found Soileau failed to prove the existence of a defect on the road surface of the bridge. Although the majority expresses intent at the outset to pretermit discussing all related issues, except Soileau's failure to prove a defect, the opinion detours from a faithful review of this single issue. Following a rutted path, the opinion sways back and forth from the central issue to considerations of whether the bridge posed an unreasonable risk to the ultimate question of causation. This obvious mixing and mingling of issues, I believe has resulted in the majority's refusal to fully consider the recent Supreme Court holding in Wiedeman v. Dixie Electric Membership Corp., 627 So.2d 170 (La.1993). In support of his contention that the bridge was defective, Soileau offered the following evidence:
(1) The bridge inspection reports prepared by the State of Louisiana;
(2) The bridge inspection reports prepared by Southern Pacific railroad;
(3) The bridge inspection reports prepared by St. Martin Parish;
(4) Testimony of the Breaux Bridge city engineer regarding his findings on visually inspecting the bridge just three weeks prior to the accident;
(5) Testimony regarding discussions between the city council members and the city engineer three weeks before the accident;
(6) Expert testimony of Gene Moody relating to the condition of the surface and subsurface of the bridge;
(7) Expert testimony from Louisiana Paving regarding improper repair of the bridge surface three days before the accident;
(8) Correspondence by the city engineer advising the city council that the bridge should be closed to the public.
The exclusion of this evidence, Soileau urges, prevented him from carrying his initial burden of establishing the existence of a defect on the bridge's surface. I agree. The Supreme Court's holding in Wiedeman convinces me this evidence was improperly excluded. Soileau's offerings were intended to show not only prior knowledge of the defect; but its actual existence on the night of the *426 accident and further to corroborate his version of the occurrence. Soileau's accident was not unwitnessed. The witness testified he saw Soileau lose control of the moped while traveling across the bridge. Exactly what caused him to lose control of the moped is the ultimate question which the majority says it pretermitted. For now then, the question is solely whether the road surface of the bridge was defective. The evidence excluded by the trial judge would have aided Soileau in carrying his burden of proof on this crucial issue. Furthermore, the evidence may have corroborated his testimony and that of the only witness to the accident that the moped landed in a pot-hole which caused Soileau to swerve into a rut and eventually lose control of it. Even defendants' witnesses and the trial judge acknowledged the bridge surface was rutted and uneven. No report was prepared or photograph of the scene taken on the night of the accident. Undeniably, the excluded evidence would have benefitted the factfinders, here the judge and jurors, in factually determining the condition of the bridge at the time of the accident.