848 So.2d 104 (2003)
Maria WOODBURY, Silvia Moriel, Liliana Jackson, Lucrecia Hernandez, Magda Beckman, Julia Pullin, Carlos Villaverde, and Marta Rodriguez,
v.
LOUISIANA DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT.
Value Rent-A-Car, Inc.,
v.
Carlos Villaverde, et al.
Nos. 03-CA-13, 03-CA-14.
Court of Appeal of Louisiana, Fifth Circuit.
May 28, 2003.
*106 Frank J. D'Amico, Darla D'Amico, Frank D'Amico, APLC, New Orleans, LA, *107 for Maria Woodbury, Silvia Moriel, Liliana Jackson, Lucrecia Hernandez, Magda Beckman, Julia Pullin, And Martha Rodriquez, plaintiffs/second appellants.
Michael R. Guidry, New Orleans, LA, for Carlos Villaverde, plaintiff/second appellant.
Richard P. Ieyoub, Attorney General, Gary A. Cotogno, Special Assistant Attorney General, Pickering & Cotogno, New Orleans, LA, for Louisiana Department of Transportation and Development, defendant/appellant.
Panel composed of Judges SOL GOTHARD, JAMES L. CANNELLA and WALTER J. ROTHSCHILD.
WALTER J. ROTHSCHILD, Judge.
Following a lengthy bench trial in this single vehicle accident case, the trial court rendered judgment in favor of plaintiffs and against the Louisiana Department of Transportation and Development ("DOTD"). Both plaintiffs and DOTD have appealed from this judgment. For the reasons stated more fully herein, we affirm.

Facts and Procedural History
On the afternoon of June 16, 1991, Carlos Villaverde was driving a 1991 Mitsubishi Mirage which was owned by Value Rent-A-Car along La. Hwy. 18 near Edgard, Louisiana. His mother and two aunts accompanied him, and the group was returning to New Orleans after lunch and a plantation tour. Carlos' mother, Julia, was seated in the front passenger seat, and his two aunts, Carmen Woodbury and Marta Rodriguez, were seated in the rear seat of the vehicle. Carlos Villaverde testified at trial that he was traveling south on River Road (La.18) when an oncoming vehicle crossed the center line into his lane of travel. He stated that he veered right in an attempt to avoid the vehicle, and his vehicle proceeded through a grassy roadside ditch and struck a utility pole. Both Julia Villaverde and Carmen Woodbury were killed in the collision; Carlos Villaverde and Marta Rodriguez sustained serious injuries.
Plaintiffs, the two survivors of the accident and the relatives of the deceased passengers, filed the present lawsuit against DOTD for its acts of negligence in failing to properly mark and sign the roadway, in failing to have the proper elevation and shoulders, in placing stationery objects on the side of the roadway, and in failing to properly design and construct and maintain the roadway and the shoulder. Plaintiffs subsequently amended their petition to name as defendants Mitsubshi International Corporation, the manufacturer of the vehicle involved in the accident, Value Rent-A-Car, Inc., the owner of the vehicle, Louisiana Power and Light Company (n/k/a Entergy), the owner of the utility pole involved in the accident and American Express Company, which supplied insurance for the rental car. All defendants except DOTD settled plaintiffs' demands prior to trial and were released from the lawsuit.
The matter proceeded to a bench trial solely against DOTD on May 26, 1998 and continued on an intermittent basis until the conclusion of trial on September 7, 1999. On May 30, 2001, the trial court rendered judgment in favor of plaintiffs. The trial court allocated 85% of the fault to Carlos Villaverde on the basis that the accident was primarily caused by his inattentiveness and inexperience. The remaining 15% of the fault was assessed to DOTD on the basis that the placement of the utility pole at the end of a ditch and culvert near the curve in the road created an unreasonably dangerous condition which rendered the roadway defective.
*108 DOTD moved for a new trial on the basis that the utility pole was not in the custody of DOTD and that it did not create an unreasonable risk of harm. The trial court denied DOTD's motion on August 15, 2001, and DOTD now suspensively appeals from this judgment on the basis of several assignments of error. The plaintiffs have also brought a devolutive appeal from the judgment on the basis that the trial court erred in its apportionment of fault.

Applicable Law
In Stobart v. State, 617 So.2d 880, 882 (La.1993), the Louisiana Supreme Court explained the standard of review the appellate courts must apply when reviewing the trial court's findings of fact:
A court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." Rosell v. ESCO, 549 So.2d 840 (La.1989). There is a two-part test for the reversal of a factfinder's determinations:
(1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and
(2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).
See, Mart v. Hill, 505 So.2d 1120 (La. 1987).
This test dictates that a reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court's finding. Id. The reviewing court must review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous.
Nevertheless, the issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. See generally, Cosse v. Allen-Bradley Co., 601 So.2d 1349, 1351 (La.1992); Housley v. Cerise, 579 So.2d 973 (La.1991); Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990). Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
In order for the DOTD to be held liable under either a negligence or strict liability theory, the plaintiff must prove that (1) the DOTD had custody of the thing which caused plaintiffs' damages, (2) the thing was defective because it had a condition which created an unreasonable risk of harm, (3) the DOTD had actual or constructive notice of the defect and failed to take corrective measures within a reasonable time, and (4) the defect was a cause-in-fact of plaintiffs' injuries.[1]Brown v. Louisiana Indem. Co., 97-1344 (La.3/4/98), 707 So.2d 1240; Lee v. State ex rel Department of Trans. and Dev., 97-0350 (La.10/21/97), 701 So.2d 676.
In determining whether liability exists under a duty-risk analysis, a plaintiff must prove that the conduct in question was the cause-in-fact of the resulting harm, that defendant owed a duty to plaintiff which defendant breached and that the risk of harm was within the scope of protection afforded by the duty breached. *109 Mundy v. Department of Health and Human Resources, 620 So.2d 811 (La.1993). The DOTD has a duty to maintain the public highways in a condition that is reasonably safe for persons exercising ordinary care and reasonable prudence. Brown, supra at 1242 (citing La. R.S. 48:21). This duty extends to the shoulders of highways as well. Brown, supra; Myers v. State Farm Mut. Auto. Ins. Co., 493 So.2d 1170, 1172 (La.1986). The highway department's duty to maintain safe shoulders encompasses the foreseeable risk that for any number of reasons, including simple inadvertence, a motorist might find himself traveling on, or partially on, the shoulder. Id. This duty extends to drivers who are slightly exceeding the speed limit or momentarily inattentive. Ledbetter v. State, Through Louisiana Dept. of Transp. and Development, 502 So.2d 1383 (La.1987). As to the area off the shoulder of the road, but within the right of way, DOTD owes a duty to maintain the land in such a condition that it does not present an unreasonable risk of harm to motorists using the adjacent roadway or to others, such as pedestrians, who are using the area in a reasonably prudent manner. Oster v. DOT & D, 582 So.2d 1285 (La.1991). Whether DOTD breached its duty, that is, whether the roadway at the scene of the accident was in an unreasonably dangerous condition, will depend on the facts and circumstances of the case. Campbell v. Louisiana Dep't. of Transp. & Dev., 94-1052 (La.1/17/95), 648 So.2d 898, 901-02.

DOTD's Appeal
DOTD first contends that the trial court committed manifest error in determining that the vehicle in this case left the roadway and struck and a culvert when there is no evidence in the record to support the finding that a culvert was involved in the accident. Based on this manifest error, DOTD argues that a de novo review of the record is required. We do not agree.
In its reasons for judgment, the trial court stated as follows:
The court finds that the condition created by DOTD, where a telephone pole was placed at the end of a ditch and a culvert, created an unreasonably dangerous condition, which ipso facto rendered the roadway defective. The court makes such a finding based on both the documentary evidence submitted, coupled with the testimony of the witnesses. That is, the court finds that but for the location of the ditch, culvert and light pole, the injuries suffered by the victims in this case would not have been as severe. The court also finds that it should have been obvious to DOTD that if a car missed the instant turn, and proceeded straight off of River Road, it would likely enter the subject ditch. Once this happened, the driver would not be able to turn out of the ditch, but instead would crash into the culvert and utility pole. Moreover, it is apparent that in such an event, there is a greater likelihood that the driver would not be able to steer out of the ditch, and would thus strike the telephone pole situated at the far end of the ditch.
The testimony in the record indicates that the roadside ditch referred to by the trial court was part of a drainage system whereby a culvert was placed under the state highway to run from the levee to the ditch. The testimony and evidence further supports a finding that the two right wheels of plaintiff's vehicle entered the ditch prior to its impact with the pole. Although the trial court mentioned the presence of the culvert in its reasons for judgment, the trial court did not specifically find that plaintiff's vehicle struck the culvert. Rather, the court made a factual determination that the vehicle entered the *110 ditch where the culvert was located and continued though, striking the pole at the end of the ditch. This determination is supported by the testimony of the witnesses and more particularly, by the police photographs of the accident scene. We find that the record supports the trial court's mention of the presence of the culvert, and we fail to find that the trial court's determinations are manifestly erroneous.
DOTD next contends that the trial court erred in finding any causative effects of the ditch on this accident. DOTD admits that the record contains expert testimony that the ditch channeled the vehicle into an impact with the pole, but appellant relies on the trial court's reasons for denying the motion for new trial which state that the court did not rely on the testimony of plaintiffs' experts on this issue in rendering its judgment. DOTD contends the only remaining evidence in the record as to the role of the ditch is the testimony of DOTD's expert who stated that the presence of the ditch did not cause this accident. Thus, DOTD contends that the evidence is contrary to the findings of the trial court. We find no merit in this argument.
Carlos Villaverde testified at trial that as he traveled down River Road, he saw an oncoming vehicle in his lane of travel. He moved to the right to avoid an accident and attempted to go into a patch of grass, but the car did not go any further and hit a pole. He specifically stated that he could not "maneuver the vehicle." Mr. Villaverde was unaware at the time of the accident that he had struck the ditch, but he stated he realized this fact when he went back to the scene after the accident and saw the ditch in front of the pole. In addition, the photographs of the accident scene taken by emergency personnel clearly show that Villaverde's vehicle entered the ditch on two wheels and came into contact with the pole.
Although DOTD's expert in accident reconstruction, Gerald Corwin, testified on direct examination that the ditch had no effect on this accident because there was not enough reaction time to make a corrective maneuver, the witness admitted on cross-examination that the car was riding along one side of the ditch with its tires, and that this would have some effect on the handling of a vehicle.
After a review of the record in this case in its entirety, we conclude that the trial court's conclusions are not manifestly erroneous. Even without considering the testimony of plaintiffs' expert witnesses, we find that that the testimony of other witnesses as well as the documentary evidence presented supports the trial court's findings that the presence of the ditch played a substantial role in causing this accident.
DOTD next contends that it was legal error for the trial court to impose liability on DOTD based upon inapplicable design standards, also referred to as AASHTO standards. However, in its reasons for judgment, the trial court concluded that the highway design standards referred to by DOTD did not exist at the time La. Hwy. 18 entered the state highway system in 1921 and that there had been no reconstruction of the highway prior to the accident which would have made the standards applicable. Specifically, the trial court stated:
After considering all of the evidence, the court finds that plaintiffs have not met their burden of proving that the 1946 scarification, or any of the other projects were major reconstructions. Therefore, DOTD is not responsible for bringing Hwy. 18 up to current AASHTO standards.
*111 Thus, the trial court concluded that the AASHTO design standards were not applicable in this case and did not impose liability on the DOTD based on a violation of these standards. This argument is therefore without merit.
However, while the failure to adhere to AASHTO standards may not alone attach liability, DOTD's adherence to design standards both at the time of original construction and at the time of the accident are a relevant factor in determining whether the roadway is unreasonably dangerous. Dill v. DOTD, 545 So.2d 994 (La. 1989); Aucoin v. State Through Dept. of Transp. And Development, 97-1938 (La.4/24/98), 712 So.2d 62, 66. In imposing liability on the DOTD, the trial court relied on defendant's legal duty to maintain its highways in reasonably safe condition. The trial court made a factual conclusion that the pole that was placed at the end of a ditch and a culvert created an unreasonably dangerous condition for which the DOTD is liable.
This factual determination is well supported by the record. James Clary, plaintiffs' expert witness in highway design and safety, testified that the lane and shoulder widths of La. Hwy. 18 at the place where the accident occurred violated DOTD's highway standards which were in effect at the time of the accident. Clary further testified that the ditch was located 11 feet from the edge of the shoulder and had a slope of 3:1, both of which violated DOTD's clear zone guidelines that were also in effect at the time of the accident. Under the circumstances presented herein, we find no error of the trial court in considering the standards applicable to state highways in reaching its determination that the condition of the roadway in this case was defective and presented an unreasonable risk of harm.
DOTD next contends that the trial court erred in finding that DOTD had custody of the utility pole. DOTD contends that the uncontroverted evidence offered at trial indicates that the pole was owned and maintained by Entergy. Thus, DOTD contends it was legal error for the court to impose liability against it absent a showing of custody of the pole. Further, DOTD argues that because the pole was located outside of its right of way, DOTD had no duty to maintain the area.
In its reasons for judgment denying DOTD's motion for new trial, the trial court considered this argument as follows:
The court notes initially that despite the implications of DOTD, the court did not find that the pole alone created the unreasonably dangerous condition of the roadway. Rather, the court specifically found that, "the condition created by DOTD, where a telephone pole was placed at the end of a ditch and a culvert, created an unreasonably dangerous condition, which ipso fact rendered the roadway defective." Thus, contrary to DOTD's assertions, the court found that the totality of the circumstances, i.e., a ditch that is parallel to a road that turns, and leads directly into an obscured culvert, and also which terminates with a telephone pole, is an unreasonably dangerous situation.
The court did not find, as argued in brief, that DOTD had custody of the utility pole in this case. Rather, the court found that the placement of the pole at the end of the ditch in close proximity to the roadway rendered the roadway defective. It is undisputed that DOTD had custody of La. Hwy. 18 and the culvert and ditch in question. Further, the record in this case indicates that DOTD maintained ditches that were adjacent to culverts, including the ditch that was adjacent to La. 18. Thus, although DOTD may not have had custody *112 of the pole itself, DOTD had custody of the culvert and the ditch that comprised this highway drainage system.
The testimony in the record supports the trial court's findings that because of the close proximity of the ditch to the edge of the highway and based on the placement of the pole in the center end of the ditch which was maintained by DOTD, this situation became unreasonably dangerous because vehicles which left the road and entered the ditch would be forced into a head-on impact with the utility pole. Under the specific circumstances of this case, we find no error in the trial court's ruling imposing liability on DOTD where DOTD had custody of the culvert and the ditch and was responsible for maintaining this area adjacent to the roadway.
By its next argument on appeal, DOTD contends that the condition of the roadway was not proven to be defective. Whether the condition of a road is unreasonably dangerous is a question of fact and should only be reversed if it is manifestly erroneous or clearly wrong. Petre v. State, 01-0876 (La.4/3/02), 817 So.2d 1107. We recognize that the trial court did not reach the issue of whether the curvature of the roadway was defective based on the court's rejection of plaintiffs' claim of a phantom motorist which crossed the center line. However, DOTD nevertheless has the duty to maintain its right of way in a condition that does not present an unreasonable risk of harm. Oster v. DOT & D, supra, 582 So.2d 1285 (La. 1991).
Although the testimony as to whether the ditch was completely within DOTD's right of way is conflicting, it is undisputed that the ditch in this case was built and maintained by DOTD and was therefore within the custody of DOTD. James Clary testified that the ditch was 11 feet from the edge of the roadway and constituted a violation of established clear zone standards. James Clary further testified that the ditch was actually operating as a catch basin which could have been covered without compromising its utility. However, the evidence in the record shows that the ditch and culvert were completely obscured by grass and other vegetation and that the placement of the ditch adjacent to the utility pole caused a vehicle entering the ditch to be channeled into the pole. Although DOTD cannot be held responsible for all injuries on the state's highways, we find that plaintiffs successfully proved a defect in the roadway within DOTD's custody that created an unreasonable risk of harm to the motoring public which ultimately caused plaintiffs' harm in this case.
DOTD next contends that the trial court erred in failing to allocate fault among the settling defendants. DOTD contends that the record contains clear evidence as to Entergy's ownership of the utility pole and as to the role of the seat belts in the vehicle in contributing to the injuries. DOTD argues that fault should have been assessed both to Entergy and to the owner and manufacturer of the vehicle, and that DOTD is entitled to a credit for the amount of these settling defendants' fault.
When a defendant urges the fault of a non-party, it is incumbent upon that defendant to provide a preponderance of evidence that fault actually exists on the part of the non-party. Terro v. Casualty Reciprocal Exchange, 93-593 (La.2/2/94) 631 So.2d 651, writ denied, 94-0522(La.4/24/94), 637 So/2d 157. As previously stated herein, the trial court failed to find the utility pole involved in this accident to be unreasonably dangerous. Rather, the court found the pole was a secondary cause of plaintiffs' injuries. We have found that the record supports this finding *113 and that the trial court did not manifestly err in its factual determinations. Thus, there is no factual support in the record for an allocation of fault to Entergy.
With regard to the allegation of defects in the seat belts, our review of the record in this matter fails to reveal a preponderance of evidence that the seat belts in the vehicle malfunctioned or were defective, or that any such defect contributed to the injuries suffered by the occupants of the vehicle. Absent sufficient competent evidence to show that a defect in the seatbelts contributed to plaintiffs' injuries, the trial court did not err in failing to allocate fault to the owner or manufacturer of the vehicle.
By its last two arguments, DOTD contends that as plaintiffs failed to establish all of the elements of a prima facie case, the trial court erred awarding damages and in denying its motion for new trial. We find no merit in these arguments.
A new trial is required when the verdict or judgment appears clearly contrary to the law and evidence. La. C.C.P. art.1972. Further, the trial court has the discretion to grant a new trial in the interest of justice. La. C.C.P. art.1973. As to quantum issues, the inquiry of the reviewing court is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the "much discretion" of the trier of fact.
As previously stated herein, the judgment of the trial court is not contrary to the law and evidence. After a careful and thorough review of the record, the testimony and the evidence presented, we conclude that the trial court did not err in finding DOTD negligent or strictly liable for a defective roadway condition that created an unreasonable risk of harm to the motoring public and ultimately caused plaintiffs' injuries. Plaintiffs proved by sufficient competent evidence that DOTD breached its duty of care to the occupants of the Villaverde vehicle to maintain its roadway in reasonably safe condition, and that this conduct was a cause-in-fact of the resulting harm. The record also contains evidence that the state was aware of the substandard condition of the roadway and that other accidents had occurred on this accident site. Thus, the trial court did not err or abuse its discretion in finding that plaintiffs had established a prima facie case and in denying the motion for new trial.
With regard to the award of damages, we find that plaintiffs made a prima facie showing of a defect in the state highway that contributed to their injuries and that damages were properly awarded on this basis. An award of damages is within the discretion of the trial court. La. C.C. art. 2324.1.
Although DOTD makes a general allegation in its brief as to the excessiveness of the damage award, this statement is presented in a conclusory fashion without reference to the record and supporting jurisprudence. Under these circumstances, we fail to find that the issue of the amount of the damage award rendered is properly before us. See, Uniform Rule 2-12.4; Soileau v. Southern Pacific R.R., 93-1064 (La.App. 3 Cir. 4/20/94), 640 So.2d 417, 421-22. Further, there is a substantial amount of evidence in the record regarding the extent of the injuries suffered by both the surviving victims of the crash and by their families. After a considered and thorough review of the lay and medical testimony, as well as the other evidence presented at trial, we find no abuse of the trial court's discretion in its award of damages to plaintiffs. The damage awards will therefore be affirmed.

*114 Plaintiffs' Appeal

By their appeal, plaintiffs first contend that the trial court erred in its apportionment of fault. Plaintiffs contend that the condition of the roadway was dangerous and defective, and that DOTD should be held at least 95% at fault for this accident. Further, plaintiffs assert that the trial court erred in finding Carlos Villaverde greater than 5% at fault where there was no evidence that he was speeding, driving while intoxicated, or driving in a reckless manner.
The seminal case on the apportionment of fault between parties is Watson v. State Farm Fire & Casualty Ins. Co., 469 So.2d 967 (La.1985). In Watson, the Louisiana Supreme Court identified various factors which may influence the degree of fault assigned, including: whether the conduct resulted from inadvertence or involved awareness of the danger, how great a risk was created by the conduct, the significance of what was sought by the conduct, the capacities of the actors, whether superior or inferior, and any extenuating circumstances which might require the actor to proceed in haste, without proper thought. Watson, 469 So.2d at 974.
After reviewing all of the evidence submitted to the trial court, we cannot say that the trial court's apportionment of fault between DOTD and Mr. Villaverde was unreasonable or not supported by the record.
In its reasons for judgment, the trial court found that this accident was primarily caused by Carlos Villaverde's inattentiveness coupled with his inexperience in driving. The record indicates that although Mr. Villaverde was not speeding or intoxicated, he was engaged in a conversation with the passengers in his vehicle. Further, the record shows that Mr. Villaverde was not a regular driver, and in fact rarely used a car as a method of transportation.
In addition, the trial court determined that plaintiffs had failed to prove the existence of a phantom motorist which crossed the central line of travel and caused Mr. Villaverde to leave the roadway. This determination is supported by the record which contains conflicting testimony as to the presence of an oncoming vehicle at the time this accident occurred. The trial court apparently rejected Mr. Villaverde's testimony regarding a phantom vehicle. Thus, Mr. Villaverde is unable to rely on the argument that he was forced off of the roadway by an oncoming vehicle. Rather, the record supports the trial court's finding that Mr. Villaverde left the roadway due to his inattentiveness and inexperience, rather than based on the fault of a third party.
Although Mr. Villaverde's inexperience and inattentiveness set the accident in motion, the driver had no control over the resulting harm caused by the impact of the vehicle with the ditch and subsequently the utility pole. DOTD must therefore bear responsibility for the location of the obscured ditch in close proximity to the roadway and adjacent to the utility pole. Under the circumstances presented here, we find no manifest error in the trial court's apportionment of fault.

Conclusion
Accordingly, for the reasons assigned herein, the judgment of the trial court is affirmed. Each party is to bear its owns costs of these appeals.
AFFIRMED.
NOTES
[1] In this 1991 case, knowledge of the defect is not a prerequisite to a finding of strict liability. See, Jacobs v. City of Bunkie, 98-2510 (La.5/18/99), 737 So.2d 14, 23.