871 So.2d 522 (2004)
Mario SCRAMUZZA
v.
RIVER OAKS INC., d/b/a River Oaks Hospital and ABC Insurance Company.
No. 03-CA-959.
Court of Appeal of Louisiana, Fifth Circuit.
March 30, 2004.
*525 Jacob J. Amato, Jr., Kelly A. Humphreys, Amato & Creely, Gretna, LA, Counsel for plaintiff-appellee-2nd appellant.
David A. Bowling, Wilson, Bowling & Kraus, New Orleans, LA, Counsel for defendant-appellant.
Panel composed of Judges SOL GOTHARD, THOMAS F. DALEY and CLARENCE E. McMANUS.
CLARENCE E. McMANUS, Judge.
Plaintiff, Mario Scramuzza, filed suit against defendant, River Oaks, Inc., for injuries to his arm that he sustained while attempting to transport a patient from the hospital owned and operated by defendant, River Oaks. Following trial, the jury returned a verdict finding that Mr. Scramuzza's injuries were caused by an unreasonably dangerous condition that existed on the hospital property. The jury further concluded that the parties were equally at fault for the injuries and thereafter awarded damages. Both parties filed post trial motions for judgment notwithstanding the verdict, alternatively seeking new trial or additur/remittitur. The trial court denied those motions, and both parties appealed. For the following reasons, we amend the trial court judgment to reduce the award of past medicals to $32,184.44 and assess court costs equally between the parties; and as amended, we affirm the judgment.

FACTS AND PROCEDURAL HISTORY
In May 2000, plaintiff, Mario Scramuzza, was employed as a paramedic with East Jefferson General Hospital. During that time, he and his partner responded to a call to pick up a patient at River Oaks Psychiatric Hospital and transport that patient to another medical facility. Upon arriving at River Oaks, plaintiff contends his partner entered the facility and was told by the receptionist to drive to the side of the building where another River Oaks' employee would direct them to park. As they drove around, they saw someone, later identified as Gilbert Worthy, motioning for them to pull their ambulance onto the grass near a side entrance and a sidewalk close to one of the buildings. The two paramedics did as they were instructed and parked their vehicle on the grass close to the exit and the sidewalk. They went inside the building to assess the patient, a rather nervous, three-hundred pound man complaining of chest pains. They proceeded to wheel the patient on a stretcher from the hospital exit to the sidewalk and onto the grass toward the ambulance. As they attempted to maneuver through the grass to the back of the ambulance, the patient began shifting on the stretcher and the stretcher began to fall. Plaintiff's partner, John Martindale, had one hand on the stretcher as he tried to open the ambulance door with his other hand and plaintiff was on the other end of the stretcher. Plaintiff tried to catch the patient and keep him and the stretcher from falling to the ground by balancing the stretcher against his body and extending his left arm under the stretcher. Plaintiff was unsuccessful, the stretcher toppled, fell onto his left arm, and the patient fell to the ground. Plaintiff suffered a ruptured bicep tendon to his left arm which resulted in one surgery *526 to reattach the tendon and another to remove a bone spur in his forearm. As a result he has permanent damage to and deformation of his left arm.
Plaintiff filed suit against River Oaks alleging the general negligence of River Oaks' employees due to their instructions and alleging strict liability for the dangerous condition created by the unevenness of the grass, and the failure to maintain a safe premises as major causes of the accident. Plaintiff's employer, East Jefferson Hospital, intervened in the suit for reimbursement of workers' compensation and medical benefits paid to plaintiff.
A jury trial was held on October 21, 22 and 23, 2002. Plaintiff and his partner testified at trial that neither of them inspected the grass prior to entering the building because the urgency of the call dictated to them that their primary responsibility was to get to the patient and assess his condition. They noticed the elevated sidewalk and that the ground was slightly inclined. Other than that, the ground just looked like grass. Plaintiff parked where he did because East Jefferson discourages backing up the ambulance, and he observed trees and drainage equipment that he thought presented potential parking problems in his rearview mirror. Plaintiff believes the accident occurred because the grass was uneven.
Plaintiff's treating physicians testified that plaintiff was not a malingerer; he followed instructions but was anxious to get back to work. Both physician's testified that there is some permanent disability to plaintiff's left arm and that future surgery is a possibility.
Plaintiff's expert, Thomas Butcher, an EMT instructor for the Medical Center of Louisiana, testified that an EMT's duties are to arrive at the scene, assess the patient, determine the problem, administer competent treatment, monitor and transport the patient to a hospital. He noted there is no prohibition against parking on grass. However, EMTs should avoid driving on grass if possible. He pointed out that stretchers are generally designed to roll on grass. He would not have second guessed where to park at River Oaks. He had no opinion as to the design of River Oaks Hospital. He did not inspect the hospital grounds. He opined that plaintiff did not do anything wrong in this case.
River Oaks' expert, Dawna Orgeron, City of New Orleans Emergency Medical Services Manager, testified that plaintiff could have backed up to the exit. She opined that the stretcher toppled because plaintiff pushed it while his partner was trying to open the door of the ambulance; the patient was restless and moving on the stretcher; and the stretcher was not balanced. She toured River Oaks and did not see anything wrong with the grass. She agreed that the best place to park was as close to the patient as possible.
River Oaks' employee, Gilbert Worthy, testified that he made the decision for the paramedics to drive around to the side entrance. The patient was very anxious and did not want to be wheeled to the front entrance. He waved at them to let them know which door to come to. They did not ask him where to park.
After deliberation, the jury attributed fifty percent fault to plaintiff and fifty percent fault to River Oaks. It awarded $25,000.00 for past, present and future physical pain and suffering; $35,000.00 for past medical expenses; and $55,000.00 for past and future lost wages for a total of $115,000.00. The jury did not award damages for past, present and future mental anguish and emotional distress or loss of enjoyment of life. The trial court's final judgment, signed December 12, 2002, stated that the jury found an unreasonably *527 dangerous condition existed on the property, the condition caused plaintiff's injuries and damages, but that plaintiff was negligent in causing the accident. The judgment recited the jury's percentage of fault and assessment of damages and awarded court costs to plaintiff.
Thereafter, plaintiff filed a rule to tax costs, seeking expert witness fees. Plaintiff also filed a motion for JNOV, or in the alternative for a new trial to prevent a miscarriage of justice, and requested additur, contending that the jury verdict was too low and was contrary to the law and evidence. Specifically, he argued that, once the jury found a dangerous condition existed on River Oaks' property, it should have eliminated comparative fault and should have assessed damages. Plaintiff asserted the verdict was inconsistent because the jury's quantification of fault should have been based on the existence of the dangerous condition which was the cause in fact of the accident. Additionally, plaintiff maintained that the jury must not have understood that the damage award would be reduced by fifty percent after its assessment of comparative fault. Plaintiff also argued that the jury's assessment did not factor in East Jefferson's intervention seeking reimbursement of $38,926.67 in compensation and medical benefits paid on plaintiff's behalf and that the failure to award damages for mental anguish, emotional distress and loss of enjoyment of life was erroneous. Plaintiff did not articulate why he should receive these damages.
River Oaks filed an opposition to plaintiff's rule for costs and an opposition to plaintiff's request for a JNOV. It contended that plaintiff should pay at least half of the costs at issue because he was found to be fifty percent at fault. River Oaks opposed plaintiff's JNOV, arguing that reasonable jurors could have reached a different verdict in this case. It maintained that the jury did not err in assessing the comparative fault of plaintiff because his actions were a substantial factor in causing his injury and there was sufficient evidence of his fault. Moreover, the jury properly completed the verdict form as written, and plaintiff did not object to the form. Additionally, it argued there was no evidence that the jury did not understand plaintiff's recovery would be reduced based on his percentage of fault. Plaintiff did not object to a jury instruction that explained the effect a finding of comparative fault would have on the damage award. Further, plaintiff made the jury aware of East Jefferson's intervention and explained it would receive $38,926.67 of any amount it awarded him. River Oaks argued that the jury was not legally required to consider the intervention when setting the damage award. Rather, the damage award should reflect the total amount of damages plaintiff suffered irrespective of any third-party claims to the proceeds. It also argued that plaintiff failed to present evidence of mental anguish, emotional distress or loss of enjoyment of life and is therefore not entitled to damages for those alleged injuries. It further argued that plaintiff is not entitled to a new trial because the jury verdict was not clearly contrary to the law and evidence, nor did plaintiff set forth specific grounds to justify a new trial. Moreover, because plaintiff did not offer any evidence that the jury award was inadequate, his motion for additur was properly denied.
River Oaks also filed a motion to amend the judgment, or alternatively to vacate the judgment, or alternatively, for a JNOV, new trial or remittitur. It asserted that the jury erroneously found an unreasonably dangerous condition based on plaintiff and his partner, John Martindale's, testimony that the grass had a slight incline but that they could not identify *528 any particular holes or defects in the ground. River Oaks noted that at the time of the accident Martindale did not have both hands on the stretcher. Moreover, River Oaks maintained that the jury did not make a finding of negligence. Rather, the verdict was based on its conclusion of an unreasonably dangerous condition on the property which was not substantiated by expert testimony. River Oaks sought a remittitur arguing that the jury award of $55,000.00 for past and future wages is too high because plaintiff's lost wages through trial were $15,710.63. River Oaks pointed out that shortly after surgery, plaintiff returned to work fulltime at full pay. River Oaks also noted that evidence of plaintiff's medical and special damages totaled $32,184.44; yet, the jury awarded $35,000.00. River Oaks further noted that the trial court's final judgment made no ruling in favor of any party, did not provide an award amount either for damages or court costs. Nor was there a deduction from the damage award for plaintiff's comparative fault.
After a hearing, the trial court denied both parties' motions for JNOV, new trial and/or remittitur and additur, stating that neither party made a sufficient showing as to why the jury verdict should be upset. The trial court awarded plaintiff $2,700.00 in expert witness fees and reimbursement for his court costs. The trial court granted River Oaks' motion to amend the judgment which was signed on January 27, 2003. The judgment was amended to state that the total due plaintiff damages were $115,000.00, subject to a fifty percent reduction based on the jury's conclusion that plaintiff was comparatively negligent. It rendered judgment against River Oaks in the amount of $57,500.00 plus interest, with $19,463.34 of that amount payable to intervenor, East Jefferson, and the remaining $38,036.67 payable to plaintiff. River Oaks filed a motion for a suspensive appeal from the January 27, 2003 judgment. Plaintiff filed a motion for a devolutive appeal also from the January 27, 2003 judgment.

DISCUSSION
We must first address River Oaks' motion to dismiss Mr. Scramuzza's devolutive appeal. River Oaks moved for a suspensive appeal in this case before Mr. Scramuzza filed his motion for a devolutive appeal. In its motion to dismiss Mr. Scramuzza's appeal, River Oaks argues that La.C.C.P. art. 2133 required Mr. Scramuzza to effect his appeal in this case by answering the River Oaks appeal rather than by filing a separate appeal. River Oaks further contends that Mr. Scramuzza's appeal seeks review of post trial rulings that are only subject to review under our supervisory jurisdiction.
La.C.C.P. art. 2133 provides that "[a]n appellee shall not be obliged to answer the appeal unless he desires to have the judgment modified, revised, or reversed in part or unless he demands damages against the appellant." But neither the Louisiana Code of Civil Procedure nor the jurisprudence has ever recognized the answer to an appeal established by Article 2133 as the exclusive procedural device for an appellee to seek modification, revision or reversal of a final judgment. While an appellee may seek appellate review by answering another party's previously filed appeal within the delays established by Article 2133, that appellee may also seek that same review by filing a separate cross-appeal under Article 2121 of the Louisiana Code of Civil Procedure, within the delays allowed by Article 2123 for a suspensive appeal or Article 2087 for a devolutive appeal. And citing La. C.C.P. art. 2133, this Court has acknowledged that it is precluded from reviewing a party's requested relief when that party *529 neither answers an appeal nor cross-appeals. Gottsegen v. Diagnostic Imaging Services, 95-977, p. 8 (La.App. 5 Cir. 3/13/96); 672 So.2d 940, 944, writ denied, 96-0707 (La.4/26/96), 672 So.2d 909. Moreover, although River Oaks is correct that the assignment of error in Mr. Scramuzza's appellate brief requests review of a nonappealable post-trial judgment, the substance and argument in that brief clearly demonstrate Mr. Scramuzza's intention to seek relief the judgment on the merits in this case. Mr. Scramuzza's appeal should therefore be considered. See Brister v. Continental Ins. Co., 30,429, p. 3 (La.App. 2 Cir. 4/8/98); 712 So.2d 177, 180. Accordingly, River Oaks's motion to dismiss Mr. Scramuzza's devolutive appeal is denied.
Turning now to the merits of these cross-appeals, we first consider defendant River Oaks' claims of manifest error in the jury's finding that an unreasonably dangerous condition existed at the River Oaks Hospital and in the jury's finding that any condition at River Oaks Hospital caused plaintiff's injuries.
Two theories of liability are available in Louisiana to a plaintiff claiming injury caused by a thing's condition. The first theory is negligence, under Articles 2315 and 2316 of the Louisiana Civil Code, and the second theory is strict liability under Article 2317 of the Louisiana Civil Code. Under both theories, the plaintiff has the burden of proving that the thing's condition presented an unreasonable risk of harm, or was defective, and that this condition was a cause-in-fact of the plaintiff's injuries. Both theories employ the duty-risk analysis on a case by case basis. Schreiber v. Jewish Federation of Greater New Orleans, 02-0992 (La.App. 4 Cir. 1/29/02), 839 So.2d 51, writ denied 03-0613 (La.6/6/03), 845 So.2d 1089. The plaintiff must prove that the conduct in question was a cause-in-fact of the resulting harm, that the defendant owed a duty of care to the plaintiff, that the requisite duty was breached by the defendant, and that the risk of the harm was within the scope of the protection afforded by the duty breached. Daye v. General Motors Corp., 97-1653, p. 7 (La.10/30/98); 720 So.2d 654, 659.
Under the duty-risk analysis, the initial inquiry to determine if a party may be held liable is cause-in-fact. The plaintiff must prove that the alleged defect in the thing was a cause-in-fact of the plaintiff's harm. A party's conduct is a cause-in-fact of the harm if it was a substantial factor in bringing about the harm. For example, the act is a cause-in-fact in bringing about the injury when the harm would not have occurred without it. While a party's conduct does not have to be the sole cause of the harm, it is a necessary antecedent essential to an assessment of liability. Whether an action is the cause-in-fact of the harm is essentially a factual determination that is usually left for the factfinder. Lasyone v. Kansas City Southern R.R., 2000-2628 (La.4/3/01), 786 So.2d 682.
A trial court's findings of fact will not be disturbed unless the record establishes that a factual, reasonable basis does not exist and the finding is clearly wrong or manifestly erroneous. Syrie v. Schilhab, 96-1027 (La.5/20/97); 693 So.2d 1173, 1176. Where two reasonable views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart v. State, Through Dept. of Transp. and Development, 617 So.2d 880, 882 (La.1993). The issue to be resolved by the reviewing court is not whether the trier of fact is right or wrong, but whether the factfinder's conclusion was a reasonable one. Syrie, supra.
*530 The reviewing court must give great weight to factual conclusions of the trier of fact. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared with the appellate court's access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts. Pinsonneault v. Merchants & Farmers Bank & Trust Co., 2001-2217 (La.4/3/02), 816 So.2d 270, citing Canter v. Koehring Company, 283 So.2d 716, 724 (La.1973).
River Oaks argues that the jury erred in finding an unreasonably dangerous condition existed on the hospital property. It notes there was no expert testimony to identify a defect in the grass at issue. River Oaks points out that plaintiff and his partner could not identify any holes or defects. Rather, they testified that it just looked like grass.
In this case, the jury found an unreasonably dangerous condition existed on River Oaks' property and that condition was a cause in fact of plaintiff's injuries. The record demonstrates that both plaintiff and his partner testified that the sidewalk was elevated from the grass and that the ground was slightly inclined. The jury accepted this testimony as sufficient evidence of an unreasonably dangerous condition existed on River Oaks' property. Based on our review of the record, we find no manifest error in that conclusion.
Both the plaintiff and the defendant challenge the jury's apportionment of fault in this case. The plaintiff argues that once the jury found River Oaks was at fault for the unreasonably dangerous condition on its premises, it should have moved down the jury interrogatory form and assessed damages without apportioning fault to plaintiff. The defendant contends that the evidence presented at trial showed that the plaintiff was totally responsible for his own injuries.
In Watson v. State Farm Fire and Casualty Ins. Co., 469 So.2d 967, 974 (La. 1985), the Louisiana Supreme Court identified the factors to consider in weighing the degree of fault assigned by the jury. Those include whether the conduct resulted from inadvertence or involved awareness of the danger, how great a risk was created by the conduct, the significance of what was sought by the conduct, the capacities of the actors, whether superior or inferior, and any extenuating circumstances which might require the actor to proceed in haste, without proper thought. Estevez v. Baron, 02-326 (La.App. 5 Cir. 10/16/02), 828 So.2d 725.
In this case, the evidence shows that plaintiff and his partner were instructed by a River Oaks' employee to pull their ambulance on the grass near an exit closest to the patient. Although this may not have been the optimal place to park, plaintiff followed the employee's instructions. Plaintiff's training (that he must assess this potentially critical patient as soon as possible) dictated his actions in this case. Based on our review of the evidence, we find no manifest error in the jury's apportionment of fault.
Plaintiff and defendant also challenge the damages awarded by the jury in this case. Plaintiff argues that the damages were too low because he missed 125 days of work; he is unable to perform his job as he did prior to this accident, and he is permanently disabled and disfigured as a result of his injuries. Additionally, plaintiff *531 argues that the jury committed legal error and rendered an inconsistent verdict by failing to award damages for mental anguish and loss of enjoyment of life in light of the assessed damages.
Under this state's jurisprudence, the term "general damages" refers to that category of damages which may not be fixed with any degree of pecuniary exactitude, but which involve mental or physical pain or suffering, inconvenience, loss of gratification or intellectual or physical enjoyment, or other losses of lifestyle which cannot be measured definitively in terms of money. Corbello v. Iowa Production, 02-0826 (La.2/25/03), 850 So.2d 686, 713. In particular, the jurisprudence of this state has recognized that damages for non-pecuniary loss, such as mental anguish, are actual or compensatory in nature. Id. Whether a jury verdict is inconsistent because it awards special damages and does not award general damages, is an issue to be decided on a case by case basis. See generally, Wainwright v. Fontenot, 774 So.2d at 76.
However, he presented no evidence to support his assertion that he is entitled to damages for mental anguish or loss of enjoyment of life, and the jury concluded that such an award was not appropriate. After reviewing the record, we find that determination does not constitute legal error or render the verdict inconsistent.
The assessment of quantum, or the appropriate amount of damages, by a trial judge or jury is a determination of fact, one entitled to great deference on review. Wainwright v. Fontenot, 00-0492 (La.10/17/00), 774 So.2d 70, 74. The role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Id.
In this case, the record supports the award for past, present and future physical suffering and for past and future lost wages. The evidence adduced at trial indicates that plaintiff suffered a traumatic injury to his left arm that required two surgeries, that he missed at least 125 days of work and that he suffered permanent disability and disfigurement to his left arm, despite River Oaks' argument that the jury award for lost wages exceeds actual lost wages. However, the parties stipulated that medical expenses totaled $32,184.44. Therefore, we find merit in River Oaks' claim that the award for medical expenses should be reduced from $35,000.00 to that amount.
Defendant also appeals the trial court's assessment of one hundred percent of the court costs against it when plaintiff was found to be fifty percent at fault. Pursuant to La.Code Civ. P. art. 1920, the party cast in judgment is generally taxed with costs; however, the trial court has the discretion to assess costs of a suit in any equitable manner. Sallinger v. Robichaux, 98-2160 (La.App. 1 Cir. 6/23/00), 762 So.2d 761, 764, writ denied, 2000-2189 (La.1/5/01, 778 So.2d 598), rehearing denied, 00-2269 (La.2/9/01), 785 So.2d 24, reconsideration denied, 00-2189 (La.2/9/01), 785 So.2d 25. The trial court is afforded great discretion in awarding costs and an award of costs must be affirmed in the absence of an abuse of discretion. Gunn v. Robertson, 02-831 (La. App. 5 Cir. 12/30/02), 836 So.2d 643, 645. Likewise, the fixing of expert fees is within the discretion of the trial court and that award will not be disturbed on appeal unless there is an abuse of discretion. Id. The trial court's oral reasons for judgment indicate that although each party was found liable in this case, defendant should bear all of the court costs and expert witness fees because plaintiff's injury was *532 the result of his presence on defendant's property. Here, the jury did not find one party to be prevailing; instead, fault was apportioned. This being so, we will apportion court costs as follows: fifty percent to plaintiff and fifty percent to defendant. We decline to disturb the trial court's award of expert witness fees to plaintiff finding no abuse of discretion with that award.

CONCLUSION
Based on the foregoing, we amend the judgment of the trial court to reduce the award of past medicals to $32,184.44 and its assessment of court costs. The assessment of trial court costs is amended to tax plaintiff, Mario Scramuzza with fifty percent of the costs and defendant, River Oaks with fifty percent of the costs. Each party is to bear their own costs for this appeal.
AFFIRMED AS AMENDED.
DALEY, J., dissents.
DALEY, J., dissents:
I respectfully dissent from the majority's position that plaintiff Scramuzza proved that the grassy lawn contained an unreasonably dangerous condition that caused his accident. The theory presented to the jury was that the lawn contained a defect that posed an unreasonable risk of harm or dangerous condition giving rise to liability. However, the grassy lawn was not shown to have any defect, nor could plaintiff identify any defect therein, or state a cause of the accident related to the lawn, other than it had some unevenness that is to be expected in a grassy surface.
A defect is a condition that creates an unreasonable risk of harm to persons on the premises. Lee v. Magnolia Garden Apartments, 96-1328 (La.App. 1 Cir. 5/9/97), 694 So.2d 1142 (cites omitted) However, not every minor imperfection or irregularity will give rise to liability. The defect must be of such a nature as to constitute a dangerous condition which would reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances.
Though the lawn was not as perfectly flat as the adjacent cement walkway, plaintiff did not show that it had any characteristics other than those expected from a grassy lawn. The slight unevenness in its contours were not shown to be atypical or irregular for a lawn. Plaintiff failed to present evidence that showed this lawn had any defect. Plaintiff failed to identify any defective condition in this lawn. Nor did he present expert witness testimony regarding the condition of the lawn. Neither could Scramuzza exactly pinpoint why the stretcher tipped. The photographs in the record show the lawn, at the point where Scramuzza parked, as a very wide open space free from landscaping or other obstructions. The grass stopped exactly at the edge of the cement walkway and was trimmed very short. Looking at all the evidence, there is not any credible evidence that that lawn posed a risk of unreasonable harm, or that the lawn caused this accident.
I note that liability in this case did not rest upon the alleged instructions given by the River Oaks employee about where Scramuzza should park his ambulance. Defendant's expert, Ms. Orgeron, noted that ambulance drivers like Scramuzza are trained to roll the stretcher over various terrains in emergency situations. And Orgeron testified that Scramuzza himself was in charge of where he parked the ambulance, and was responsible for that safety, notwithstanding his assertion that he was "directed" to park on the grass by a River Oaks employee who waived him over and pointed to the ground. The pictures of the *533 lawn and sidewalks show that Scramuzza could have parked his ambulance in such a way that the stretcher need never have left the cement before being loaded.
Scramuzza's testimony and that of his rider, Martindale, show, as highlighted in River Oaks's brief, that it was the negligence of the two EMTs that caused the accident. They were rolling the patient, who weighed over 300 pounds and was restless with pain, on the stretcher over the grass. Scramuzza kept rolling while Martindale stopped in order to open the ambulance door, causing the weight of the patient to shift, which in turn caused the patient to fall on the ground and Scramuzza to stretch out his arm to catch him.
For these reasons, I would reverse the judgment of the trial court and dismiss plaintiff's demand, and case plaintiff with costs.