SUSAN M. CHEHARDY, Judge.
IgThis is a personal injury suit arising from an automobile accident. The plaintiff appeals a judgment, based on a jury verdict, that awarded him $400.00 for medical expenses, but awarded nothing for other elements of damage or costs. We affirm.
The parties stipulated to liability at the commencement of the trial, so the only issues for the jury were the damages sustained by the plaintiff. The jury found that as a result of the accident, the plaintiff suffered a neck injury, but no back injury. The jury awarded $400.00 for past medical expenses, but zero for general damages, past lost wages, future lost wages (diminished earning capacity), and future medical expenses. The trial court *548 adopted the verdict as the judgment of the court, adding “with each party to bear their own costs.”
The plaintiff filed a motion for a new trial and/or a judgment notwithstanding the verdict, which the trial court denied. The plaintiff also filed a motion to set expert witness fees, but the trial court never ruled on that motion.
On appeal the plaintiff raises the following assignments of error:
1. The jury erred in its failure to award general damages to the plaintiff, given the fact that they found liability against the defendants and found that the plaintiff had sustained objective and actual physical injuries as a result of the accident.
|s2. The presiding judge erred in failing to award court costs and expert witness fees to the plaintiff.
FACTS
The following facts were in the evidence the jury heard at trial. The plaintiff, Gregory Lewis, was a passenger in a Ford F-350 dually truck that was struck from the rear by a Toyota Tacoma truck on October 8, 2003. At the scene, the plaintiff told the driver of the Toyota, Warren Lewis, that he was initially unaware that an accident had occurred.[1] Similarly, Lemuel Spears, driver of the Ford truck in which the plaintiff was riding, also was initially unaware there had been a collision.
At the scene the plaintiff denied being injured,. and did not request emergency medical care. None of the other three persons involved in the accident complained of injury at the scene or sought medical care.
State Trooper Eugene Narcisse, who investigated the accident, testified that the vehicle in which the plaintiff was riding had been pushed forward five feet. His police report indicated the driver of the following vehicle (Warren Lewis) said he was traveling 30 miles per hour at the time of the accident. The report also indicated that it was not raining and the roadway was not wet.
In contrast, the driver of the following vehicle, defendant Warren Lewis, testified that his speed was five miles per hour, at most ten, at the time of impact. His air bags did not deploy and he knew his speed because he looked at the speedometer. He also testified that his vehicle was not pushed forward and that he had not told the police officer the vehicle he struck was pushed forward. He said further that the roadway was wet at the time of impact because it had rained.
|4The plaintiff admitted that the vehicle in which he was riding did not sustain much damage. Photographs of both vehicles show little damage. The defendant’s truck, the Toyota, sustained some damage to the left front side; the Ford truck in which the plaintiff was riding, however, sustained only some scratches and paint streaks on its rear bumper.
On October 10, 2003, two days after the accident, the plaintiff saw Dr. Leia Fricke, a general practitioner who primarily treats patients for soft-tissue injuries, on referral by his attorney. Dr. Fricke had treated the plaintiff previously for back pain following a December 2001 slip-and-fall accident. She had last seen him in January 2002, at which time she considered his back still problematic and recommended he return for further treatment. However, he made no further visits to Dr. Fricke *549 until October 2003, when he complained of neck pain from the accident involved here.
At that time he told her his 2001 back injury had resolved. He complained of neck pain, which Dr. Frieke diagnosed as cervical sprain. Dr. Frieke saw and treatr ed the plaintiff nine times between October 10, 2003 and May 3, 2004. During that time, he never complained to her of back pain or back problems but only of neck pain.
The plaintiff saw Dr. Kenneth Vogel, a neurosurgeon, on June 1, 2004, with complaints of neck and right arm pain only. The plaintiff told Dr. Vogel he had been in good health until the accident involved here. Dr. Vogel determined that the plaintiffs post-accident MRI tests revealed cervical and lumbar abnormalities. He found the plaintiffs signs and symptoms to be causally related to this accident. He admitted, however, that he could not determine from the MRIs alone when the injuries occurred or whether the abnormalities were painful, but had to rely on the patient’s subjective statements.
| fiThe plaintiff told Dr. Vogel he first started suffering back pain three months after the October 2003 accident. On his first visit to Dr. Vogel, however, the plaintiff only complained of neck pain and did not mention back pain until his second visit. Dr. Vogel said the right arm pain was consistent with neural irritation in the neck and that the plaintiff had herniations at several levels in the cervical spine. Dr. Vogel opined that the plaintiff was unsuitable for employment, that he had reached his maximum benefit from physical therapy, and that he needed more aggressive treatment, including CT scan, myelogram, and surgery. The plaintiff did not return to Dr. Vogel after July 2004.
The plaintiff underwent an independent medical examination by Dr. Claude Williams, an orthopedist, on September 13, 2004. Dr. Williams determined that the plaintiffs MRI showed a herniated cervical disc. He testified that the plaintiff would need additional medical care and treatment in the form of a myelogram and CT scan, as well as possible surgery.
The plaintiffs post-accident MRIs showed disc pathology in both his back and his neck. However, all three doctors agreed that a positive MRI finding does not establish a causal link to a particular accident. Doctors Frieke and Vogel both testified initially that the neck injury findings were causally related to the accident in October 2003. Subsequently, however, Dr. Frieke admitted that if she had known of the plaintiffs prior history, which he had not disclosed to her, she might have found differently.
The plaintiff testified on direct examination that at the time of trial he was suffering severe, constant pain in his neck and back that had been ongoing since the 2003 accident. He admitted that he was having back problems prior to the 2003 accident, although he claimed. the back problems came and went and had existed for almost 20 years. He admitted that while in prison, he worked in fields Rand always had back problems. He also admitted undergoing a prior lumbar MRI in 2001. Nevertheless, he failed to advise Dr. Frieke of most of his prior back problems.
Further, he was impeached with records of his medical treatment at Charity Hospital, which showed that only six months after the accident, when he was seeking alcohol and drug rehabilitation at Charity, he said he had no pain and no ongoing pain.
In addition, the plaintiff lied at trial about his pre-accident injury history. He denied having been injured in 1998, when he fell to the road out of a moving police car. He also denied having filed a person *550 al injury suit regarding that accident, but was impeached with a copy of a handwritten lawsuit petition, which he personally had drafted and filed, in which he sought $130,000.00 for various injuries, including spinal injuries.
In addition, the plaintiff testified to a 2001 job-related injury, for which he eventually saw Dr. Frieke. On cross he admitted he was still having back pain when he stopped seeing Dr. Frieke in 2002. The plaintiff also denied another low-back injury that he sustained in 1999 while he was incarcerated. He was impeached with records proving the 1999 accident occurred and necessitated hospitalization and medical care for his low back.
There also was evidence that he sustained a job-related back injury in October 2001. Further, there was testimony that the plaintiff had received several gunshots to his back and torso and that two bullets were still lodged along his spine.
The plaintiff also was untruthful about his substance abuse. He testified on direct- that he was drug-free prior to the accident, but he was impeached with medical records that showed he failed two random drug tests shortly before the 17accident at issue, and lost two jobs as a result. The plaintiffs Charity Hospital records showed that for over a year prior to May 2004, the plaintiff stated he used cocaine and drank large amounts of alcohol every day.
Dr. Frieke admitted that the plaintiff exhibited drug-seeking behavior while under her care. She was not aware of his prior substance abuse or prior injuries. Upon learning the information at trial, she stated she was concerned about the plaintiffs credibility regarding his subjective complaints of neck pain, as well as of the alleged cause for the pain.
In addition, the plaintiff testified that he suffered back pain almost immediately after the accident. However, the records and medical testimony showed he made no complaints of back pain until almost nine months after the accident. Further, he testified at trial that during the accident he was pushed forward and backward, which motion caused his neck injury. However, Dr. Fricke’s records and testimony showed he told her three days after the accident that he moved side-to-side during the impact, not front-to-back.
Further, the defense established that the plaintiff was untruthful in seeking significant past and future lost wages due to his alleged disability. On cross examination, the plaintiff admitted that he was incarcerated for 16 years, between 1985 and 2001. At the time of this accident, he had been out of prison for only two years. He claimed on direct that he had been steadily employed during that two-year period, but on cross he was impeached. In contrast to his claim to have worked for one employer, Tosh, Inc., for seven months, the defense used the plaintiffs deposition to impeach him and establish that he had really only worked there for seven weeks. He also admitted he had worked at two other jobs for only a few months before being fired from each for failing random drug tests, with his most recent dismissal being three weeks before the accident at issue here.
|RIn addition, the plaintiff admitted he had lied to several employers about his physical condition. He said he could not be totally honest with his applications because if he were, he would “never get a job.”
The plaintiff also denied that he had an alcohol or drug problem at the time of the accident. He was impeached, however, with Charity Hospital records showing that in May 2004 (seven months post-acci *551 dent), he went to Charity because of a drug problem. He admitted he was honest at Charity and told the truth about his drug problem, stating that he was an intravenous drug abuser and used crack cocaine. The Charity record indicated he had needle tracks on his skin at the injection sites. He also admitted the Charity record was correct that he stated he drank a fifth of whiskey and two to three quarts of beer every day since 2000, about the time he was released from prison. He denied that he actually used that much alcohol, however, indicating he had made those statements because he was trying to get help.
Notably, during his Charity visit in May 2004 he denied that he was in pain or that he had ongoing pain, in contrast to what he claimed at trial of this matter, as well as in contrast to what he claimed to Dr. Vogel.
Dr. Williams’ testimony also impeached the veracity of the plaintiffs testimony. The plaintiff had denied to Dr. Williams that he had any pre-accident back or neck problems. Dr. Williams had the opportunity to review the plaintiffs medical records, however, which showed that the plaintiff complained of leg pain in March 1999, and again complained of low back pain with left leg numbness in October 2001.
Dr. Williams said that trauma such as falling from a moving car could cause a neck injury, especially since the plaintiff had sustained a broken or dislocated collar bone. Similarly, the plaintiff reported to Dr. Williams that his alcohol use |3was moderate, which Dr. Williams said was inconsistent with the plaintiffs statement on the Charity medical record. The plaintiff told Dr. Williams he was in recovery from narcotic use and had prior trouble with narcotics even before the accident involved here.
Dr. Williams stated that in his September 2004 examination, he found no objective evidence of a back or neck injury. Dr. Williams admitted the plaintiffs 2004 lumbar MRI showed significant changes from the 2001 test. However, Dr, Williams characterized these as degenerative changes. Becáuse an MRI cannot determine when the pathology occurred, Dr. Williams emphasized the doctor must rely on the patient’s subjective statements regarding when he became symptomatic. Hence, a patient must be truthful for a doctor to determine causation.
DAMAGES AWARD
In Wainwright v. Fontenot, 00-0492 (La.10/17/00), 774 So.2d 70, our supreme court addressed the question of whether a factfinder errs as a matter of law when it declines to award general damages after finding the defendant at fault for the plaintiffs injuries and awarding special damages for the plaintiffs medical expenses.
Prior to the Wainwright decision, the courts of appeal had frequently held that it was error of law for a jury to award special damages without awarding an amount for general damages as well, especially where there was objective evidence of injury.[2]
At the same time, in another line of cases, some courts of appeal had held it permissible for a jury to award medical expenses for an examination and/or hospital visit, while making no award for general damages, where there was serious question as to whether the plaintiff had *552 sustained any injury in the accident. |10In those cases, the courts reasoned the jury could reasonably have found that the plaintiffs did not sustain injury, but were justified in being examined following the accidents.[3]
In Wainwright, the supreme court held,
[A] jury, in the exercise of its discretion as factfinder, can reasonably reach the conclusion that a plaintiff has proven his entitlement to recovery of certain medical costs, yet failed to prove that he endured compensable pain and suffering as a result of defendant’s fault. It may often be the case that such a verdict may not withstand review under the abuse of discretion standard. However, it would be inconsistent with the great deference afforded the factfinder by this court and our jurisprudence to state that, as a matter of law, such a verdict must always be erroneous. Rather, a reviewing court faced with a verdict such as the one before us must ask whether the jury’s determination that plaintiff is entitled to certain medical expenses but not to general damages is so inconsistent as to constitute an abuse of discretion. Only after the reviewing court determines that the factfinder has abused its much discretion can that court conduct a de novo review of the record.
Wainwright v. Fontenot, 00-0492, pp. 8-9 (La.10/17/00), 774 So.2d 70, 76.
The plaintiff argues that he had objective evidence of injury to his cervical spine, in that both Dr. Fricke and Dr. Vogel observed spasm in the area, and as such he is entitled to recover general damages. In addition, he asserts the $400.00 awarded by the jury is an arbitrary amount, not based on any of the facts in the record, nor on any of the exhibits and medical bills presented at trial.
In contrast, however, the defense points out there was testimony that the plaintiff contacted the defendant insurer, State Farm, and requested $1,000.00 for medical expenses so he could be examined and treated for his alleged injuries. Instead, State Farm sent him a check for $400.00. The plaintiff, however, never In cashed it, because he was under the impression that to do so would waive his right to further recovery.
The assessment of “quantum,” or the appropriate amount of damages, by a trial judge or jury is a determination of fact, one entitled to great deference on review. As such, “the role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact.” Moreover,
before a Court of Appeal can disturb an award made by a [factfinder,] the record must clearly reveal that the trier of fact abused its discretion in making its award. Only after making the finding that the record supports that the lower court abused its much discretion can the appellate court disturb the award, and then only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afforded that court.
[Citations omitted.]
Wainwright v. Fontenot, 00-0492, p. 5 (La.10/17/00), 774 So.2d at 74.
The onus was on the plaintiff to affirmatively establish, by a preponderance of the evidence, that he was entitled to general damages for pain and suffering. The conflicts in the testimony — not only *553 the numerous instances in which the plaintiffs own testimony was impeached, but even the conflicts between the defendant driver’s testimony and the state trooper’s testimony-establish that this case turned strongly on the jury’s determinations of witness credibility.
Our review of the record shows us no manifest error and convinces us the jury’s award in this case is not an abuse of the great discretion accorded the trier of fact in these matters.
COSTS AWARD
La.C.C.P. art.1920 provides, “Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause. | ^Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable.”
The plaintiff complains that since the jury rendered the verdict in his favor, the trial court should have awarded him his expert witnesses’ fees.
The party cast in judgment is generally taxed with costs; however, the trial court has the discretion to assess costs of a suit in any equitable manner. Scramuzza v. River Oaks Inc., 03-959, p. 14 (La.App. 5 Cir. 3/30/04), 871 So.2d 522, 531, writ denied, 04-1088 (La.6/25/04), 876 So.2d 839. Likewise, the fixing of expert fees is within the discretion of the trial court and that award will not be disturbed on appeal unless there is an abuse of discretion. Id.
For the foregoing reasons, the judgment is affirmed. The plaintiff-appellant is cast with the costs for this appeal.

AFFIRMED.

. The record does not indicate that defendant Warren Lewis is related in any way to Gregory Lewis, the plaintiff.

. That was the rule within this circuit. See, e.g., Bienvenu v. State Farm Mut. Auto. Ins. Co., 545 So.2d 581 (La.App. 5 Cir.1989). See also, cases cited in Wainwright, 774 So.2d at 75.

. See cases cited in Wainwright, 774 So.2d at 76.