hLABORDE, Judge.
In this slip and fall case, the trial court found that plaintiff, Mona Sims, was injured by an unreasonably dangerous condition existing in the store of defendant, Winn Dixie. The trial court found no fault on the plaintiffs part and awarded damages, including loss of consortium damages to plaintiffs husband. Winn Dixie appeals. We affirm the judgment in favor of Mrs. Sims, but out of an abundance of caution vacate the judgment in favor of her husband, for which a remand is in order.
FACTS
On the evening of January 8, 1992, Mrs. Sims entered the Winn Dixie on North Par-kerson in Crowley, Louisiana. Soon after entering the store, she asked an employee for directions to the rest rooms. The employee directed her to exit the display area through a pair of double doors, then proceed down a narrow, four foot wide, hall to the right. As plaintiff proceeded down the hallway, she first encountered the men’s rest room on the right. Fifteen or twenty feet further down the hallway was the women’s rest room, on the left. Entering the hallway, plaintiff recalls seeing a yellow warning sign or cone near the men’s room. It was approximately three feet tall and had the words “caution” and “wet floor” inscribed on each of its faces. When she reached the door to the women’s rest room, she pushed against the door, and her feet slipped out from under her. She landed knees first, injuring her fright knee. According to her testimony, it was only after falling that Mrs. Sims realized there was water on the floor. Inferences drawn from the testimony of witnesses who saw plaintiff soon after the accident corroborate her having landed knees first: the knees of her pants were wet.
While there were no other witnesses to the accident itself, the store manager, Michael Moody, and two Winn Dixie employees, Dale Matthews and Dan Hanks, testified as to events surrounding the accident. Mr. Moody testified that he became aware of a puddle of water in the hallway between the men’s and ladies’ rest rooms sometime around 9:00 p.m., before the accident. He immediately instructed an employee to mop up the water and place warning cones in the area. Mr. Moody stated he believed the problem was taken care of and did not return to the area until after the accident occurred.
*718 Dale Matthews was working in the produce section next to the hallway on the night of the accident. His duties required him to walk past the hallway entrance every 5 to 10 minutes. While Mr. Matthews’ version of events was mostly consistent with Mr. Moody’s, there were significant differences. Mr. Matthews believes he first discovered the water in the hallway around 6:00 p.m. He saw at least two puddles, one by the men’s room and one four to six feet from the ladies room (between the men’s and ladies’ rooms). Mr. Matthews felt certain that he saw no water immediately in front of the ladies’ room door. Mr. Matthews remembered reporting the water to Mr. Moody and being instructed to keep the area mopped up. He testified that he carried out these instructions every 10 to 15 minutes. He also remembered Mr. Moody returning to the hallway once before the accident. From Mr. Matthews’ description, the water began on the right side of the hallway and extended to the middle. He did not believe the puddles reached the left side of the hallway. While not immediately apparent, after seeing the puddles consistently reappear after mopping them up, Mr. Matthews felt it was “common sense” that the water was originating from the produce cases that stood on the opposite side of the right wall of |3the hallway. This suspicion was confirmed after the accident. These produce cases contain ice to keep the produce fresh and consequently require drains to remove the water resulting from the melting ice. While Mr. Moody thought it “rare,” he was aware of instances where the drains had become obstructed, causing water to leak to surrounding areas.
As well as the witnesses could pinpoint, the accident occurred sometime between 9:00 and 9:30 p.m. After falling, Mrs. Sims was able to regain her feet and report the accident to Mr. Moody. After assisting Mr. Moody in filling out an accident report, Mrs. Sims called her husband, who picked her up and drove her home.
LIABILITY
After the defense rested, the trial court rendered judgment from the bench:
“All right. Okay, the Court is ready to rule. Gentlemen, the Court finds that the defendant has allowed the existence of a condition which created an unreasonable risk, and therefore breached the duty owed to the plaintiff; and for that reason the Court will find in favor of the plaintiff and make an award of....”
Both parties argue concerning the applicability of LSA-R.S. 9:2800.6, which governs the liability of merchants for slips and falls by customers on store premises. Since the accident occurred after September 1, 1990, we apply the most recent amendment of R.S. 9:2800.6. Under this statute, the plaintiff must prove 3 things to carry his burden of proof:
(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable;
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence; and
(3) The merchant failed to exercise reasonable care.
In brief, defendant argues the trial court’s reasons indicate it applied pre-1991 law. Then, a plaintiff only had to prove the existence of a dangerous condition, to shift the burden to the defendant to prove he had acted reasonably under the circumstances.
On the other hand, plaintiff argues R.S. 9:2800.6 is not |4applicable to this case. Paragraph (A) of the provision states:
“A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition.”
To enter the hallway where the bathrooms are located, Mrs. Sims had to exit the main shopping area of the store through a pair of double doors. Plaintiff contends this took her out of the “aisles, passageways, and floors” of the store. Plaintiff cites no authority for her position, and the only related case we have found in this circuit, Rutledge v. Brookshire Grocery Co., 523 So.2d 914 (La.App. 3 Cir.1988), writ denied, 531 So.2d 269 (La.1988), was decided before the original slip and fall statute was enacted. In Rut *719 ledge, the plaintiff slipped and fell on a tomato in the parking lot of a grocery store.
We have no difficulty associating the hallway in question with “passageways” and “floors” and therefore find no merit to plaintiff’s argument. By its own terms, LSA-R.S. 9:2800.6 is applicable. Since the rest rooms are within the premises of the store and were established at least in part for use by store customers, we find R.S. 9:2800.6 applies to the hallway in the ease sub judice.
Applying the elements of R.S. 9:2800.6 to this case, the parties do not dispute that water on a floor can constitute an unreasonable risk of harm. In regards to the store owner’s knowledge of the water, it is clear Winn Dixie employees had discovered the problem before the accident. (The water was noticed by store employee Dale Matthews at 6 p.m.) The only question is whether Winn Dixie acted reasonably with this condition.
Having established a hazardous condition and notice, liability turns on whether the plaintiff proved the merchant failed to exercise reasonable care.
There is absolutely no indication from the testimony at trial that any party thought the plaintiffs request to use the rest room was in any way unusual or out of the ordinary. To the contrary, it was not uncommon for customers to use the restrooms on the | gpremises. When the plaintiff asked an employee for directions to the rest rooms, that employee showed her the way.
“The duty of a store owner to protect customers from foreign substances is one of reasonable care under the circumstances. Reasonable protective measures, including periodic inspections, must be taken to keep the aisles and floors free from substances or objects that may cause customers to fall. The determination of whether a store’s protective measures have been reasonable is largely dependent on the circumstances of each case, taking into consideration the type and volume of merchandise, the volume of business, and the floor space used for customer services. The degree of vigilance must be commensurate with the risk involved, as determined by the overall volume of business, the time of day, the section of the store, and other relevant considerations. The store owner is not the insurer of the safety of his customers and is not required to keep the entranceways, aisles, and passageways in perfect condition. Each case turns on whether reasonable effort has been made to secure the patron’s safety under the circumstances.” Stockwell v. Great Atlantic & Pacific, 583 So.2d 1186, 1189 (La.App. 1 Cir.1991).
Viewing these factors, we are unable to say the trial court erred in holding that defendant failed to exercise reasonable care under the circumstances. Winn Dixie could have shut down the produce cases, denied access to the rest rooms, or better yet, placed raised mats or fixed the leaks. However, rather than taking any of these courses of action, the store chose to take its chances by relying on lesser measures.
Under the circumstances, we affirm the conclusions reached by the trial court. In doing so, like the trial court, we are mindful of plaintiff’s testimony that she had an accident in another grocery store seven years before the accident at issue. Like the trial court, we are aware of plaintiffs testimony that she saw the cones, knew that they warned of wet floors, knew what the cones meant and knew she had to be careful. Still, we are not inclined to second-guess the credibility determinations of the trial court, who believed plaintiffs assertion that she saw “no water at all.”
We also recognize that there are those who would attach importance to the store in which the accident occurred. According to that view, the source of a store owner’s duty stems from the risk of the plaintiffs attention being constantly drawn to the I (¡displayed merchandise. We do not find that factor dispositive, for a store patron might be as distracted by a store’s backrooms as might be a theatre patron who is offered the opportunity to go backstage.
The case law surrounding slip and fall accidents repeatedly teaches that the store owner is not the insurer of the customer’s safety. As explained in Stockwell, this means the store owner is not required to *720 keep his floors and passageways in perfect condition. Nonetheless, LSA-R.S. 9:2800.6 does not preclude recovery. Rather, it establishes ground rules by which the factfin-der might draw its conclusions. Like the trial court we conclude that the storekeeper failed to observe its duties under the circumstances, and therefore affirm the trial court’s findings and apportionment of fault.
Finally, we cannot say the trial judge awarded excessive damages to plaintiff.
[1] In Reck v. Stevens, 373 So.2d 498 (La.1979), this Court commented on appellate review of general damage awards and on the “much discretion” in fixing damages accorded to trial courts by La.Civ.Code art. 1934(3)(1870).2 The decision pointed out that the role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Each case is different, and the adequacy or inadequacy of the award should be determined by the facts or circumstances particular to the case under consideration.
I y[2] In Reck, this court disapproved the appellate court’s simply reviewing the medical evidence and then concluding that the award for those injuries was excessive, without taking into consideration the particular effect of the particular injuries on the particular plaintiff. This court further disapproved of the use of a scale of prior awards in cases with generically similar medical injuries to determine whether the particular trier of fact abused its discretion in the awards to the particular plaintiff under the facts and circumstances peculiar to the particular case. The initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the “much discretion” of the trier of fact. Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963); Ballard v. National Indem. Co. of Omaha, Neb., 246 La. 963, 169 So.2d 64 (1964); Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967). Only after such a determination of an abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonably within that discretion. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Bitoun v. Landry, 302 So.2d 278 (La.1974); Spillers v. Montgomery Ward & Co., 294 So .2d 803 (La.1974).
[3] The standard for appellate review of general damage awards is difficult to express and is necessarily non-specific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award. Nevertheless, the theme that emerges from Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963) through Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), and through Reck to the present case is that the discretion vested in the trier of fact is “great,” and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993) (note omitted).
After falling, plaintiffs knee swelled to the point she could not bend it. Her pain caused her to stay awake all night. She saw Dr. Gardner, who gave her Tylenol III and told her to elevate her leg. By the time her next appointment came up, she could hardly move. Dr. Gardner referred her to a specialist, Dr. Gidman, who first prescribed therapy five days a week. She saw Dr. Gidman about five or six times. The pains partially subsided some time in March, recurring less regularly and with less pain after her last doctor’s appointment in April. Although she discontinued medical treatments beyond April, as of trial, she still suffered from pains any time she was in cool surroundings (including those cooled by air conditioning) or rain. Plaintiff further indicated that she never suffered *721 those pains until alter her Winn Dixie accident. Under the circumstances, we are unable to say that the trial judge erred in awarding damages of $13,500 in past and future general damages.
Finally, defendant contends that the husband’s failure to attend the proceedings ipso facto precludes his recovery of consortium damages, notwithstanding his wife’s testimony that she and her husband were unable to have marital relations for several | ^months, owing solely to defendant’s negligence. In support of its position, it cites Mitchell v. Clark, 448 So.2d 681, 684 (La.1984) wherein the Supreme Court found no error in a trial court’s holding against a party its failure to testify; however, that case is not dispositive insofar as the Supreme Court explicitly noted the trial judge’s error in giving the rebuttable presumption the usual conclusive effect of a judicial confession. Moreover, to the extent such a presumption exists, there is considerable question as to whether it exists in the context of an individual who is not subpoenaed to appear or whose absence is unavoidable. See, e.g., Morrison v. Edwards, 323 So.2d 838, 841 (La.App. 4th Cir.1975), writ denied, 328 So.2d 167 (La.1976).
Nonetheless, notwithstanding what has just been said, under the circumstances defendant is entitled to relief. When the court overruled defendant’s efforts to obtain a dismissal of the husband’s consortium claim following disclosure of the husband’s inability to appear, the following exchange took place:
THE COURT: Well, wait, hold on. His attorney is here. And whether or not— You know, if this guy doesn’t testify and doesn’t make out his ease, then fine, you know, I’ll rule against him. But I mean I can’t dismiss that case now.
MR. CALOGERO: This would be as to Mr. Sims case.
hTHE COURT: I understand, on the consortium claim. Yes, his attorney is here, and they’re ready to proceed. Now, when the time comes for Mr. Sims to present evidence on his claim, if he doesn’t do that, then fine, you know, the Court will rule against him. But I don’t think I can—
MR. REGAN: I may not be able to present evidence on his claim. I can present other evidence, Your Honor. I think I’ve got other credible evidence that I can present.
THE COURT: All right. Okay. Mr. Calogero, do you have a representative of—
MR. CALOGERO: Mr. Moody is going to be my representative.
THE COURT: Okay. All right. Real well. Okay.
Athough it is unlikely to affect the outcome of Mr. Sims’ claim for relief, out of an abundance of caution, we feel compelled to vacate that portion of the trial court’s judgment. While the uncontradicted testimony elicited from the wife was sufficient in and of itself to show loss of consortium, we are not able to determine whether defendant held its fire in cross-examination or in prosecuting its case, in reliance on the trial court’s statements. Therefore, a remand is in order solely with regard to Mr. Sims’ claim for loss of consortium.
CONCLUSION
For the above and foregoing reasons, the judgment of the trial court in favor of Mona Faye Woods Sims is affirmed, at defendant’s costs, and the judgment in favor of her husband is vacated, with costs of those proceedings to await the outcome.
AFFIRMED IN PART, VACATED AND REMANDED IN PART.