828 So.2d 725 (2002)
Eulalia ESTEVEZ and Carlos Estevez
v.
Jaime Oscar BARON, National Car Rental System, Inc., Philadelphia Insurance Company and American National Property and Casualty Company.
No. 02-CA-326.
Court of Appeal of Louisiana, Fifth Circuit.
October 16, 2002.
Rehearing Denied November 4, 2002.
*726 C. David Vasser, Jr., Vasser & Vasser, Metairie, for Jaime Oscar Baron and National Car Rental System, Inc.
Salvador G. Longoria, Gaudin & Longoria, New Orleans, for Eulalia Estevez And Carlos Estevez.
Panel composed of Judges EDWARD A. DUFRESNE, JR., JAMES L. CANNELLA and THOMAS F. DALEY.
JAMES L. CANNELLA, Judge.
In an automobile/pedestrian accident case, the Defendants, Jaime Oscar Baron (Baron) and National Car Rental System, Inc. (National), appeal from the granting of a judgment notwithstanding the verdict (JNOV) in favor of the Plaintiffs, Eulalia Estevez and Carlos Estevez (Mrs. and Mr. Estevez). We affirm.
On May 12, 1999, Baron, a tourist, along with his family from Columbia, was driving a 1997 Chevrolet Malibu rented from National. He drove to the New Orleans airport so he would know how to get there when he decided to leave the city. He stopped at a convenience store/gas station located at Airline Highway and Oxley Street in Kenner, Louisiana to purchase windshield wiper fluid. Baron got out of his car and noticed sixty-five year old Mrs. Estevez standing in front of her car parked next to him. She was having engine problems. He entered the store, returned to his vehicle and observed her standing behind her vehicle. Baron then began to slowly back up, but did not look behind him. At the same time, she began walking toward Airline Highway, waving at her brother-in-law who was coming to give her a ride. Baron's car struck Mrs. Estevez, causing her to fall to the ground. He immediately stopped and got out. He did not know that he struck someone until he saw her on the ground. Baron and his daughter tried to help her while waiting for the police and ambulance. Mrs. Estevez *727 was taken to East Jefferson General Hospital where she was eventually admitted. She suffered two broken knees (tibial plateaus on the proximal tibias, the area just below the kneecap) and a fractured radial head of the elbow as a result of the collision.
The Plaintiffs filed suit on April 27, 2000 against Baron, National, Philadelphia Insurance Company, National's insurer, and American National Property and Casualty Company, Mrs. Estevez's underinsured/uninsured motorist carrier. A jury trial was held on August 13 and 14, 2001. The jury found Mrs. Estevez 46% at fault and Baron 54% at fault. They awarded Mrs. Estevez $18,430 for past, present and future medicals, $12,500 for lost wages and impairment of wage earning capacity, $11,500 for past, present and future pain and suffering, $11,500 for mental anguish, $11,500 for physical disability, and $11,500 for loss of enjoyment of life, totaling $76,930. The jury also awarded Mr. Estevez $2,836 for loss of consortium. The verdict was converted to the judgment of the court. The Plaintiffs then filed a motion for JNOV, additur, and/or new trial. On November 10, 2001, the trial judge denied the motions for additur and new trial, but granted the motion for JNOV as to damages. The trial judge increased the award for past, present and future pain and suffering to $35,000 (an increase of $23,500), the award for past, present and future physical disability to $20,000 (an increase of $8,000), and the award for loss of consortium to $7,500 (an increase of $4,664).
All parties appealed. The Defendants contend that the trial judge erred in granting the JNOV. The Plaintiffs contend that the jury erred in apportioning 46% of the fault to Mrs. Estevez and that the JNOV award is inadequate and should be increased.
JUDGMENT NOTWITHSTANDING THE VERDICT
La.C.C.P. art. 1811 sets out the procedures for a JNOV following a trial. C.C.P. art. 1811F provides that the motion may be granted on the issue of liability or on the issue of damages or on both. In determining whether the motion should be granted, the Louisiana Supreme Court has held that a JNOV is warranted when:
... the facts and inferences point so strongly and overwhelmingly in favor of one party that the trial court believes that reasonable persons could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable persons could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. The motion should be denied if there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions. In making this determination, the trial court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party. This rigorous standard is based upon the principle that "when there is a jury, the jury is the trier of fact."
In reviewing a JNOV, the appellate court must first determine if the trial judge erred in granting the JNOV. This is done by using the aforementioned criteria just as the trial judge does in deciding whether to grant the motion or not, i.e. do the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable persons could not arrive at a contrary verdict? If the answer to that question is *728 in the affirmative, then the trial judge was correct in granting the motion. If, however, reasonable persons in the exercise of impartial judgment might reach a different conclusion, then it was error to grant the motion and the jury verdict should be reinstated.
Joseph v. Broussard Rice Mill, Inc., 00-0628, p. 8-9 (La.10/30/00), 772 So.2d 94, 99.
Following the accident, Mrs. Estavez was treated by Dr. Raul Rodriguez, an orthopedic surgeon, from May 12, 1999 until December of 1999, when she reached maximum medical improvement. He first saw her in the emergency room of East Jefferson General Hospital. He diagnosed the broken bones and the possibility of a bruised or broken rib, although x-rays did not confirm it. The day after the accident, she exhibited bruises on her cheekbone and along her right arm. She was hospitalized at East Jefferson General Hospital for ten days during which she developed bed sores, had her legs immobilized and was given daily injections to prevent blood clots. She left the hospital in an ambulance because she was unable to use a wheelchair. The doctor ordered a hospital bed, wheelchair, and special commode for her to use at home.
Dr. Rodriguez testified that Mrs. Estavez had osteoporosis prior to the accident, a condition that causes the bones to be brittle and prone to breaking. He noted that he treated her in 1991 for a fracture of her left elbow and right knee. The broken bones in her knees will probably cause arthritis in those areas, although she had some arthritis in the right knee area because of the 1991 fracture. However, he did not see her again until this accident. The probability is less likely that arthritis will develop from the break in her elbow, because it is not a weight bearing bone. Dr. Rodriguez assigned to her a permanent impairment of each lower extremity of 15% and 6% impairment of the whole person. Dr. Rodriguez testified that these broken bones were the direct result of the impact from the accident.
The evidence showed that Mrs. Estavez wore a splint on her arm for two weeks after the accident. For three weeks following her discharge from the hospital she was bed ridden and lived in the downstairs of her home. Her husband bathed her with towels and she was forced to use a bedpan. After another three weeks, she was able to use a wheelchair and home health nurses came to her home and provided therapy and bed sore treatment. Not until August of 1999 was Mrs. Estavez able to use the shower because it was upstairs. At that time, she progressed from the wheelchair to a tripod cane. She underwent physical therapy for both knees and the elbow through August of 1999. From August through October, she had aqua therapy. Mrs. Estavez testified that she still uses a wheelchair to travel through airports, that she can barely perform her household chores because her legs will start hurting, and she can no longer kneel in church. Dr. Rodriguez noted that she still requires the use of the cane because of the injuries and her age.
Mrs. Estavez testified that she had completely healed from the fall which she suffered in 1991 to the extent that she could run in the airport in 1993 or 1994. She further testified that after this accident, she was unable to work at her regular job as a chemist at SGS Control Services, Inc. for six months, from May 13, 1999 to November 16, 1999. Her gross yearly wages were $23,690.05. Her job entailed standing and walking most of the day.
While Mrs. Estavez was in the hospital, her husband stayed with her to help her and he slept in her room. At home, he washed her with towels, helped her take care of her other bodily needs, cooked, and *729 cleaned house. Mr. Estevez continues to help with the household chores because of her residual impairments.
In regard to the damage award, based on the evidence, the trial judge concluded that the jury award was so low that the JNOV was warranted. He raised it based on his independent assessment. See: Anderson v. New Orleans Public Service, Inc., 583 So.2d 829, 833 (La.1991). He found that the facts and inferences pointed so strongly and overwhelmingly in favor of Mrs. Estavez that reasonable persons could not arrive at a contrary verdict. After our review using the same criteria, we find no manifest error in this conclusion. Once the trial court determines that the JNOV was properly granted, we apply the manifest error standard of review. In this case, we find no manifest error, or abuse of discretion in the award by the trial judge. For that reason, we decline to decrease or increase the award.
In regard to the degree of fault assigned by the jury to Mrs. Estavez and Baron, based on the evidence, the trial judge concluded that reasonable persons could not arrive at a different verdict. Thus, he denied the JNOV on the issue of the percentage of fault.
In Watson v. State Farm Fire and Casualty Ins. Co., 469 So.2d 967, 974 (1985), the Louisiana Supreme Court identified the factors to consider in weighing the degree of fault assigned by the jury. Those include whether the conduct resulted from inadvertence or involved awareness of the danger, how great a risk was created by the conduct, the significance of what was sought by the conduct, the capacities of the actors, whether superior or inferior, and any extenuating circumstances which might require the actor to proceed in haste, without proper thought. See also: Joseph, p. 23, 772 So.2d at 103.
In this case, the evidence shows that Mrs. Estavez became distracted when she observed her brother-in-law arriving to pick her up. Although in a parking lot, she failed to look for moving vehicles before going to meet her ride. Based on the evidence, we find no manifest error in the jury's apportionment of fault and in the trial judge's denial of the JNOV.
Accordingly, the judgment of the trial court is hereby affirmed. Each party is to bear his own costs of appeal.
AFFIRMED.