887 So.2d 131 (2004)
Shelby Joseph HIMEL, Jr., Individually, and as Curator of Sandra Rhodes Himel
v.
The STATE of Louisiana Through the DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, Wal-Mart Stores, Inc., Goodyear Tire & Rubber Company and the Kelly-Springfield Tire Company.
No. 04-CA-274.
Court of Appeal of Louisiana, Fifth Circuit.
October 12, 2004.
*134 William S. Watkins, James M. Funderburk, Stanwood R. Duval, Duval, Funderburk, Sundbery, Lovell & Watkins, Houma, LA, for Plaintiff/Appellee.
Charles C. Foti, Jr., Attorney General, Baton Rouge, LA, Ronald J. Landry, LaPlace, LA, Nancy A. Miller, Metairie, LA, for Defendant/Appellant.
Panel composed of Judges JAMES L. CANNELLA, MARION F. EDWARDS and WALTER J. ROTHSCHILD.
JAMES L. CANNELLA, Judge.
The Defendant, State of Louisiana, through the Department of Transportation and Development (DOTD), appeals from a judgment of liability and damages in wrongful death and survival actions brought by and on behalf of Sandra Himel, the decedent and her husband and son, Plaintiffs, Shelby Himel, Jr. and Shelby Himel, III. The Plaintiffs also filed a cross-appeal to the trial judge's reduction of the damage award under La.R.S. 13:5106 B(2). We amend in part and affirm as amended.
On September 8, 2000, the decedent was an active and healthy 48-year-old woman living in Vacherie, Louisiana with her husband, their 21-year old son and their 9-year old granddaughter. That morning, she drove her son to work in Thibodaux in her 1994 Mazda. At around 8:00 a.m., she was returning home on Louisiana Highway 20, traveling northbound on the two-lane road when she lost control of her car, crossed the road and flipped over into the bayou paralleling the southbound lane. The accident occurred somewhere near mile post 28.9. The sole eyewitness to the accident was Richard Stein (Stein), an 18-wheel truck driver who had been following her car. Stein stopped, jumped from his truck, dove into the water and tried to remove her from the car. He was unable to do so because the car was "pretty much under the mud." When the rescue unit arrived, the workers unsuccessfully tried to flip over the car. The mud was too soft. Allen Chenier, a volunteer fireman, used the rescue unit to pull the car onto shore where the rescuers were able to turn the car over and remove the decedent. *135 She was not breathing. Cardiopulmonary resuscitation (CPR) was started. Her heart rate was finally detected 15-20 minutes later and she was transported to Thibodaux Regional Medical Center.
At the hospital, state troopers and the emergency medical technicians told Dr. Sarat Donepudi that they believed that the decedent had been trapped for 15-20 minutes in the submerged vehicle. The doctor found no physical injuries, but determined that she was in a coma caused by lack of oxygen. She was unable to respond to questions and unable to recognize anyone. According to the doctor, she was like a "vegetable." The decedent remained in a comatose state until her death 14 months later, on November 1, 2002, from complications following surgery to remove an infected mediport.
The Plaintiffs[1] filed suit on July 13, 2001 against DOTD, Wal-Mart Stores, Inc., Goodyear Tire and Rubber Company and the Kelly-Springfield Tire Company. All the Defendants, except DOTD, settled with the Plaintiffs prior to trial.[2] A jury trial was held August 13, 2003 through August 15, 2003. The jury found DOTD 93% at fault and the decedent 7% at fault. It awarded her $1,260,912.15, which included medical expenses of $723,912.15. The jury further awarded $861,000 to Shelby Himel, Jr. and $300,000 to Shelby Himel, III for their wrongful death actions. The award totaled $2,421,912.15. In the judgment by the trial judge on September 16, 2003, the award was reduced by $694,000 to comply with the trial judge's interpretation of the statutory cap in La.R.S.13:5106 B(2). Judgment was entered against DOTD in the amount of $1,558,378.30.
On appeal, DOTD contends that the inconsistencies in the jury's answers to the interrogatories require this Court to conduct a de novo review. It further asserts that the trial judge erred in refusing to strike a certain juror for cause when the juror expressed her inability to be fair and impartial. Third, DOTD contends that the trial judge erred in allowing the Plaintiffs' expert to testify regarding the road condition when the photograph relied on was not properly authenticated. Next, it asserts that the jury committed manifest error in finding that it was in any way at fault, or in its apportionment of fault. DOTD also asserts that the jury erred in awarding Shelby Himel, III $300,000 when he failed to appear at trial to testify, and in the amount awarded to Shelby Himel, Jr. for the decedent's past lost wages ($87,000), and for his loss of services, loss of past support, and loss of future support ($350,000).
The Plaintiffs answered the appeal. They contend that the trial judge incorrectly interpreted La.R.S.13:5106 B and in reducing the general damage awards to a single $500,000.

INCONSISTENT JURY INTERROGATORIES
DOTD first argues that the answers to the jury interrogatories were inconsistent, *136 and that this inconsistency requires a de novo review. However, it failed to object either at the reading of the verdict or in any post-trial motions in the trial court. Thus, the trial judge never had an opportunity to take remedial action while the jury was present or otherwise rule on the question. As provided by La.C.C.P. art. 1813, the objection is waived. Metz v. Howard, 93-726, p. 5 (La.App. 5th Cir.1/25/94), 631 So.2d 1248, 1250-51; Morris v. United Services Auto. Ass' n., 32,528 p. 12-13 (La.App. 2nd 2/18/00), 756 So.2d 549, 560; Bourque v. Gulf Marine Transp., Inc., 480 So.2d 337, 340 (La.App. 3rd Cir.1985). In the absence of an objection properly raised in the trial court, the issue has not been preserved for appellate review and we will not address it.

FAILURE TO EXCUSE JUROR FOR CAUSE
DOTD next argues that one of the jurors that served on the jury, Elizabeth Ordeneaux (Ordeneaux), should have been excused for cause because she felt that the highway where the accident occurred was dangerous. She informed the trial court that her brother's car had also gone off the roadway and into the bayou. He was unhurt. When asked by DOTD's counsel if she could set aside her preconceived conclusions and listen to the evidence, she responded that "I think it's dangerous." She made that statement several times, but did not state that she could not evaluate the evidence fairly.
The juror was not alone in her assessment of the safety of the roadway. Most of the persons questioned indicated uneasiness about driving on that section of the highway or felt it was dangerous and unsafe. In addition to Ordeneaux, other members of the jury venire noted that family members or friends had run off the road into the bayou in that area. Several indicted that their preconceived notions of the roadway's safety would affect their ability to judge the case fairly. They were excused for cause. However, when the trial judge questioned the potential jurors who felt that the road was dangerous in an attempt to rehabilitate them, Ordeneaux was overlooked and not questioned. That was an oversight. In the jury selection conference among the trial judge and attorneys, counsel for DOTD stated he did not know if she had been rehabilitated because he could not hear. Everyone was having trouble hearing the potential jurors' responses because there was a problem with the acoustics in the courtroom. The trial judge and Plaintiffs' attorneys thought that she had been rehabilitated. After reviewing the transcript, we find that she had not been rehabilitated. However, no counsel attempted to find out at the time that the trial judge was questioning the potential jurors what her response had been, or to ask the court reporter to read back the rehabilitation colloquy during the conference to find out whether she had been rehabilitated. A quick review of the colloquy would have brought the oversight to the notice of the trial judge and he could have rectified it then. Because there was ample opportunity to correct the problem, we find that DOTD waived any objections to the inclusion of the juror in the jury and that a de novo review is unnecessary.[3]

TESTIMONY OF PLAINTIFF'S EXPERT
DOTD contends that the trial judge erred in allowing the Plaintiff's expert, Ronald Shields (Shields), P.E., to testify regarding the dangerous condition of the roadway on the day of the accident when *137 the photographs relied on by the expert were not authenticated as to time, place, and subject. The eyewitness, Stein, was shown several photographs and asked to assume that they depicted the area, but no evidence was produced to show that the photograph containing a police car was the exact spot where the deceased left the road on the second attempt to regain control of the car. No evidence was produced as to who took the photographs or when they were taken. Then, those photographs were shown to Shields, an expert in the "field of design, construction, and maintenance of highways." He relied on the photographs to conclude that the highway did not have an adequate edge of pavement and shoulder and that the drop-off from the road was between 4-6 inches where the deceased first left the road. The other photographs allegedly showed the general area that the car went off the road the second time. Shields concluded that because of the condition of the highway and its shoulder, there was a high probability that she would not have turned over in the bayou had the condition of the roadway been improved.
The record disclosed that the photos in question were admitted into evidence at the start of trial without objection and no objection was raised when Shields testified to his conclusions from the photographs. The failure of a party to make a contemporaneous objection to the admission of evidence during trial waives the right of a party to complain that the evidence was improperly admitted on appeal. Karagiannopoulos v. State Farm Fire & Cas. Co. 94-1048, p. 10 (La.App. 5th Cir.11/10/99), 752 So.2d 202, 208. Furthermore, DOTD failed to cross-examine the Plaintiffs' expert regarding his conclusions insofar as they related to the photographs. Consequently, we find that the objection has been waived.

LIABILITY
Two of DOTD's assignments of error relate to the finding of liability by the jury. The highway at issue was constructed in 1930 as a gravel road with gravel shoulders. The road had been overlaid with asphalt between 1930 and 2000. Each of the two lanes was 10 feet wide. The shoulders were four feet wide on each side of the roadway. There were no white stripes on the edges of the road and there were drop-offs from the roadway to the shoulders in various areas along the road. The only work that DOTD performed on the road prior to the accident was asphalt overlays. No major work was done until after the accident at issue herein.
Stein was following the deceased at a distance of about 100-200 yards when the accident happened. He testified that she was driving in a safe manner, at or below the speed limit, approximately 45 m.p.h. At a point near the accident site, he noticed that the decedent's car gradually drifted off of the lane of travel onto the shoulder of the road. In an attempt to bring her car back onto the road, she jerked the car to the left, sending the car across the yellow dividing line into the southbound left lane. The decedent again overcorrected her steering and the car veered back to the right. For the second time, she went off the road onto the right hand shoulder. When she tried to regain the road again, her car went across the two lanes, flipped upside down and went into the bayou.
On appellate review, the court's function is to determine whether the findings of the trier of fact were clearly wrong or manifestly erroneous. Brown v. Seimers, 98-694, p. 6 (La.App. 5th Cir.1/13/99), 726 So.2d 1018, 1021, writ denied, 99-0430 (La.4/1/99), 742 So.2d 556; Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable *138 inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Brown, 98-694 at p. 6, 726 So.2d 1018 at 1021; Rosell, 549 So.2d at 844. The issue to be resolved by the reviewing court is not whether the factfinder was right or wrong, but whether its conclusion was a reasonable one. Brown, 98-694 at p. 6, 726 So.2d 1018 at 1021; Stobart v. State, Through DOTD, 617 So.2d 880, 882 (La.1993). Thus, where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Brown, 98-694 at p. 6, 726 So.2d 1018 at 1021; Stobart, 617 So.2d at 882. Only where the documents or objective evidence so contradict a witness's story, or the story itself is so internally inconsistent or implausible on its face that a reasonable factfinder would not credit the witness's story, may the court of appeal find manifest error, even in a finding purportedly based upon a credibility determination. Brown, 98-694 at p. 7, 726 So.2d 1018 at 1021; Rosell, 549 So.2d at 844-45.
La. C.C. art. 2315 provides that every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it. La. C.C. art. 2316 provides that every person is responsible for the damage that he occasions, not merely by his act, but by his negligence, his imprudence or his want of skill. The Plaintiffs bear the burden of proving every element of their case by a preponderance of the evidence, that is, whether it is more likely than not, that the harm was caused by the negligent conduct of the DOTD. Lasha v. Olin Corp., 625 So.2d 1002, 1005 (La.1993). In determining whether the conduct of DOTD is negligent, the courts apply the duty/risk analysis. Todd v. State Through Dept. of Social Services, Office of Community Services, 96-535, p. 7 (La.App. 5th Cir.11/26/96), 685 So.2d 313, 317. The duty/risk analysis requires the plaintiff to prove: (1) that the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) that the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) that the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) that the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) that there were actual damages (the damages element). Boykin v. Louisiana Transit Co., Inc., 96-1932, p. 8-9 (La.3/4/98) 707 So.2d 1225, 1230.
The question of whether a defendant owes a plaintiff a legal duty is a question of law. Todd, 96-535 at 7, 685 So.2d at 317. Whether a defendant has breached a duty owed is a question of fact. Id. Negligent conduct is a cause-in-fact of harm to another if it was a substantial factor in bringing about that harm. Socorro v. City of New Orleans, 579 So.2d 931, 939 (La.1991).
In order for DOTD to be held liable under either a negligence or strict liability theory, the plaintiff must prove that (1) DOTD had custody of the thing which caused plaintiffs' damages, (2) the thing was defective because it had a condition which created an unreasonable risk of harm, (3) DOTD had actual or constructive notice of the defect and failed to take corrective measures within a reasonable time, and (4) the defect was a cause-in-fact of plaintiff's injuries. Woodbury v. Louisiana Dept. of Transp. and Development, 03-13, pgs.5-6 (La.App. 5th Cir.5/28/03), *139 848 So.2d 104, 108;[4]Brown v. Louisiana Indem. Co., 97-1344, p. 3 (La.3/4/98), 707 So.2d 1240, 1242.
DOTD has a duty to maintain the public highways in a condition that is reasonably safe for persons exercising ordinary care and reasonable prudence. Brown, 97-1344 at 3, 707 So.2d at 1242 (citing La. R.S. 48:21); Woodbury, 03-13, p. 6, 848 So.2d at 109. This duty extends to the shoulders of highways as well. Brown, 97-1344 at 3, 707 So.2d at 1242; Woodbury, 03-13 at 6, 848 So.2d at 109.
In Woodbury, we stated that:
The highway department's duty to maintain safe shoulders encompasses the foreseeable risk that for any number of reasons, including simple inadvertence, a motorist might find himself traveling on, or partially on, the shoulder. Id. ... This duty extends to drivers who are slightly exceeding the speed limit or momentarily inattentive. Ledbetter v. State, Through Louisiana Dept. of Transp. and Development, 502 So.2d 1383 (La.1987) ... Whether DOTD breached its duty, that is, whether the roadway at the scene of the accident was in an unreasonably dangerous condition, will depend on the facts and circumstances of the case. Campbell v. Louisiana Dep't. of Transp. & Dev., 94-1052 (La.1/17/95), 648 So.2d 898, 901-02.
Woodbury, 03-13 at 6-7, 848 So.2d at 109.
DOTD contends first that the Plaintiffs failed to maintain their burden of proof pursuant to La.R.S. 9:2800. R.S. 9:2800 C and D provide:
C. Except as provided for in Subsections A and B of this Section, no person shall have a cause of action based solely upon liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.
D. Constructive notice shall mean the existence of facts which infer actual knowledge.
DOTD is required to adopt minimum safety standards regarding highway design, construction and maintenance, conforming to the standards approved by the American Association of State Highways and Transportation Officials (AASHTO), whenever possible. La.R.S. 48:35 A(1). While design standards at the time of construction and at the time of the accident may be relevant in determining whether a roadway presents an unreasonable risk of harm, they are not determinative of that issue. Dill v. State, Dept. of Transp. and Development, 545 So.2d 994, 996 (La.1989); Schexnayder v. Hyundai, 00-177, p. 6 (La.App.9/14/00), 769 So.2d 683, 686 (citing Dill.) However, DOTD cannot escape liability solely because the highway met the design standards when it was built. Dill, 545 So.2d at 996; See also: Schexnayder, 00-177 at 6, 769 So.2d at 686; Furthermore, the "combination of more than one unreasonably dangerous condition" may render an off roadway area unreasonably dangerous to the public. Aucoin v. DOTD, 97-1967, p. 8 (La.4/24/98), 712 So.2d 62, 67.
In this case, the record shows that Louisiana Highway 20 was considered a dangerous roadway by Stein, by the Plaintiffs' *140 expert, Shields, and by the council members for the Parish of St. James. Stein testified that in the area where the accident occurred, there was a bad drop-off from edge of the pavement to the shoulder. He described it as "Just where like the rocks would have been ate out from against the blacktop." He felt that such a drop-off would "hold a tire on the side of the road." Shields testified that there was "a relatively vertical edge to the roadway down onto the gravel area." He estimated the angle at 75% and the drop-off between 4 1/2 inches and 6 inches where the car went off the road the first time. He testified that this condition is considered an "immediate fix" by DOTD, and that drop-offs generally appear where vehicles are forced to drive close to or on the edge of the roadway because the lanes are too narrow. He also noted that the highway lacked white striping on the edge of the highway. In his opinion, the combination of the narrow lanes, the repetitive washing away and wallowing out of the edges of the shoulders, the very steep, narrow shoulders, and the lack of white edge, all contributed to the accident. He testified that DOTD has a duty on older roadways to look at the use of the road and whether it is changing and requires upgrading.
David Hall, DOTD's expert in traffic engineering, highway design and accident reconstruction, testified that the sole cause of the accident was the inattention of the deceased. He contended that a white stripe is designed to provide visual assistance in fog, nighttime or bad weather. In this case, it was drizzling rain and cloudy, but daylight. Thus, he felt that the lack of white lines did not cause the accident. He further stated that there was no physical evidence to show where the decedent went off of the road the first time.
Trooper Van Etta was the first police officer on the scene. He took photos of the area, saw the "yaw marks" on the unimproved shoulder indicating where the car left the roadway and marked the spot. He testified that Stein told him where the deceased left the road the first time.
James Brazan (Brazan), St. James Parish councilman for the area in which the accident happened was familiar with the roadway and traveled it frequently. He testified that his constituents had been concerned about the road for years and considered it dangerous. He knew of accidents in which people had gone off the road into the bayou. Mr. Brazan stated that he had been in office for 8 years and that, during that time and before he became councilman, the St. James Parish had been trying to get the DOTD to do something to make the road safer. Over 20 years, St. James Parish sent numerous letters, some of which were admitted into evidence, and held many meetings with the DOTD, informing it that the road was dangerous and asking it to paint white stripes on the road edge, widen the road, upgrade the shoulders, or take any action, all to no avail. DOTD responded that it could not paint stripes because the road was too narrow, but made no plans to widen the lanes.
Gregory Whitney, a medical legal death investigator for the Terrebonne Parish Coroner's office and an accident reconstruction investigator, found other roads in St. James or Lafourche Parishes, near this area, where the striping had been done on similarly narrow roads.
The jury listened to the evidence and concluded that DOTD was liable. We find no manifest error in this regard. The jury could reasonably have concluded that the combination of conditions on the road contributed to the decedent's inability to regain the highway safely, that those conditions *141 were known by DOTD and that they posed an unreasonable risk of harm to the driving public. See: Aucoin, 97-1967 at 8, 712 So.2d at 67.
DOTD contends also that the jury erred in apportioning 97% of the fault to it because the decedent was inattentive and it was her inattentiveness that caused her to leave the roadway. Further, DOTD contends that she was negligent by not attempting to slow down by braking.
In Watson v. State Farm Fire and Casualty Ins. Co., 469 So.2d 967, 974 (La.1985), the Louisiana Supreme Court identified the factors to consider in weighing the degree of fault assigned by the jury. Those include:
... whether the conduct resulted from inadvertence or involved awareness of the danger, how great a risk was created by the conduct, the significance of what was sought by the conduct, the capacities of the actors, whether superior or inferior, and any extenuating circumstances which might require the actor to proceed in haste, without proper thought. Estevez v. Baron, 02-326 (La.App. 5th Cir.10/16/02), 828 So.2d 725.
See also: Scramuzza v. River Oaks Inc., 03-959, p. 12 (La.App. 5th Cir.3/30/04), 871 So.2d 522, 530.
The jury apparently was not convinced that the decedent's actions were the substantial cause of the accident. As we stated in Woodbury, the DOTD has a duty to maintain safe shoulders and that duty encompasses the foreseeable risk that for any number of reasons, including simple inadvertence, a motorist might find himself traveling on, or partially on, the shoulder. This duty extends to drivers who are momentarily inattentive. See: Woodbury, 03-13 at 6-7, 848 So.2d at 109. Furthermore, there is no evidence that had she tried to brake, the accident would have been avoided. Thus, the record supports the conclusion that the dangerous condition of the roadway was the major cause of the decedent's injuries and death. Those conditions prevented her from recovering from her momentary lapse. See: Woodbury, 03-13 at 6-7, 848 So.2d at 109. Thus, we find the jury did not err in its apportionment of fault.

GENERAL DAMAGE AWARD TO SHELBY HIMEL, III
DOTD contends that the jury erred in awarding Shelby Himel, III, $300,000 in damages for the loss of his mother because he did not testify at trial. DOTD contends that the testimony of his father relative to the son's relationship with his deceased mother was not sufficient to prove the son's damages and cites Sims v. Winn Dixie Louisiana, Inc., 93-1411 (La.App. 3rd Cir.6/22/94), 638 So.2d 716.
The first day of trial Shelby Himel, Jr. testified that his 23 year old son would not attend the trial. He explained that his son had just started working a new job 70 miles offshore and did not want to jeopardize his job and future with the company. Furthermore, his son was so distressed by his mother's death that he did not want to relive those events. Shelby Himel, Jr. testified that his son felt guilty because his mother was killed after taking him to work. He further testified that his son and the decedent were very close. She had done most of parenting of their son because he was frequently offshore while his son was growing up.
In Sims, the husband failed to attend the proceedings and the defendant claimed that his failure ipso facto precluded his recovery of loss of consortium damages. However, the wife testified that she and her husband were unable to have marital relations for several months because of the defendant's negligence. The court stated *142 that, although it may not affect the ultimate outcome, it felt compelled to vacate the award to the husband and remanded the case for a hearing on his damages, because it could not determine if "defendant held its fire in cross-examination or in prosecuting its case, in reliance on the trial court's statements that [it would rule against Mr. Sims on his consortium claim `if this guy doesn't testify and doesn't make out his case.']" However, the court noted that the wife's testimony alone was sufficient in and of itself to show loss of consortium.
In this case, DOTD knew on the first day of trial that the son was not going to testify and had ample opportunity to convince the jury that the son was not entitled to an award. The jury concluded otherwise. Based on our review, we find no necessity to remand the case and no manifest error in the jury's award of damages to the son.

PAST LOST WAGES, LOSS OF SERVICES AND SUPPORT
The Defendant contends that the jury erred in the amounts awarded to Shelby Himel, Jr. for the decedent's past lost wages ($87,000), and for his loss of services, loss of past support, and loss of future support ($350,000). The Plaintiffs agree. According to the evidence, the amount for past lost wages should be $12,400 (annual wage of $10,600 for 14 months), and no more than $267,000 for loss of services, the present amount of that item of damages calculated by the Plaintiffs' economic expert, Charles Theriot, CPA. Thus, we will reduce the award to those amounts, minus 7% comparative fault attributed to the decedent.

THE PLAINTIFFS' APPEAL
The Plaintiffs' assert that the trial judge erred in applying the $500,000 statutory cap on general damages imposed by La. R.S. 13:5106 and reducing the general damage award to reflect a single cap for the three victims, rather than imposing the cap separately on each of the Plaintiffs' general damage awards.[5]
As cited by the Plaintiffs, in a ruling made subsequent to this judgment, the Louisiana Supreme Court resolved the split in the circuits on this issue. In Lockett v. DOTD, 03-1767, p. 1 (La.2/25/04), 869 So.2d 87, 89, the Court stated that "the cap is to be applied `per plaintiff' for the wrongful death of any one person ..." Here, the jury awarded $450,000 for the decedent's general damages, $500,000 to Shelby Himel, Jr. and $300,000 for Shelby Himel, III. The trial judge reduced the general damage awards to a single $500,000. Based on the Lockett decision, the individual jury awards for general damages are reinstated.
Accordingly, the judgment is hereby affirmed as to liability and fault apportionment. We hereby amend the damage awards as follows. The jury verdict awarding Shelby J. Himel, Jr. $500,000 for general damages is reinstated. The award to Shelby J. Himel, Jr. for loss of services, loss of past support and loss of future support is reduced from $350,000 to $267,000 and the award to Shelby J. Himel, Jr. for funeral expenses in the amount of $11,000 is affirmed. The total award to Shelby J. Himel, Jr. of $778,000 is hereby reduced by 7% for Mrs. Himel's comparative fault, for a final total of $723,540 ($778,000 minus $54,460.) The jury verdict *143 for general damages awarded to Shelby J. Himel, Jr. on behalf of the decedent for her survival claim in the amount of $450,000 is reinstated. The award for the decedent's medical expenses of $723,912.15 is affirmed. The award for Sandra Himel's past lost wages in the amount of $87,000 is reduced to $12,400. The total award for Sandra Himel of $1,186,312.15 is reduced by 7% for her comparative fault, for a total of $1,103,271.15 ($1,186,312.15 minus $83,041.) The jury verdict in favor of Shelby J. Himel, III in the amount of $300,000 for general damages is reinstated, reduced by 7% for the decedent's comparative fault, for a total of $279,000 ($300,000 minus $21,000.) The judgment is affirmed in all other respects. Costs of the appeal are to be paid by the Defendant.
AMENDED IN PART, AFFIRMED IN PART, AND AFFIRMED AS AMENDED.
NOTES
[1] On January 2, 2002, Shelby Himel, III was added as a Plaintiff in an amended petition for damages.
[2] The Plaintiffs filed a supplemental petition individually and "on behalf of" the deceased. La.C.C.P. 801 requires a party seeking to be substituted for a deceased party to file an ex parte written motion and proof of his capacity to act as legal successor. However, technical forms of pleading are not required. C.C.P.art. 854. Thus, we construe the supplemental petition as an "ex parte motion" to substitute the parties for the decedent, pursuant to La.C.C.P. art. 801. We further note that the capacity to sue or be sued is presumed, unless challenged by the dilatory exception. C.C.P. art. 855. Since the Defendant failed to challenge the capacity of the Plaintiffs to represent the deceased, we find that any objection was waived.
[3] The jury verdict was unanimous.
[4] Writ Denied, 03-1830 (La.10/31/03), 857 So.2d 477 and 03-1832 (La.10/31/03), 857 So.2d 478.
[5] La.R.S. 135106 B. (2) provides:

In all suits for wrongful death of any one person, the total amount recoverable, exclusive of property damages, medical care and related benefits and loss of earnings or loss of support, and loss of future support, as provided in this Section, shall not exceed five hundred thousand dollars.